■ MATTHEW BOYLE et al., Respondents-Appellants, v 42ND STREET DEVELOPMENT PROJECT, INC., et al., Respondents-Appellants. 42ND STREET DEVELOPMENT PROJECT, INC., et al., Third-Party Plaintiffs-Respondents-Appellants, v ARCHER's IRON WORKS, Third-Party Defendant-Appellant-Respondent, and VALLEY FORGE INSURANCE CO., Sued Herein as CNA COMMERCIAL INSURANCE, Third-Party Defendant-Respondent. (And Another Action.) [835 NYS2d 7]—

Orders, Supreme Court, New York County (Shirley Kornreich, J.), entered January 19, 2005 and May 17, 2005, which granted defendants and third-party plaintiffs' cross motion and Archer's cross motion to the extent of dismissing Boyle's claims pursuant to Labor Law § 240 (1) and § 200 and for common-law negligence; denied the cross motions to the extent they sought dis-

missal of Boyle's claims pursuant to Labor Law § 241 (6) and § 241-a; conditioned the award of contractual indemnification to third-party plaintiffs upon a finding of negligence against Archer; and granted the cross motion of third-party defendant seeking dismissal of the third-party action as against it, modified, on the law, to the extent of reinstating plaintiffs' Labor Law § 240 (1) claim, dismissing plaintiffs' section 241 (6) and section 241-a claims, and otherwise affirmed, without costs.

On July 8, 1999, plaintiff Matthew Boyle was one of a six-man crew engaged in the unloading, hoisting and installation of stringers, which are steel components that form the sides of metal stairs. The stringers, each about 10 to 13 feet long and weighing several hundred pounds, were being moved from the ground level to the building's upper floors. To achieve this, the stringers had to be hoisted through an open elevator shaft by an electrical chain fall, which was erected in the elevator shaft. The chain fall was hung from about the 10th floor and extended to ground level.

There were three workers at ground level attaching the stringers to the chain fall. Boyle was kneeling on a beam in the elevator shaft on the 6th floor and operating the chain fall, which required him to guide the stringers as they were being hoisted. Also, two workers, Fred Fegel and Thomas Frame, were positioned on the 8th floor and were unloading and installing the stringers. Fegel and Frame would swing the stringers out of the elevator shaft and onto a platform in the stairwell that was adjacent to the elevator shaft.

The assembly of steel stairs further required threaded rods, which are about six feet long and weigh between 10 and 15 pounds. The threaded rods were hung from the building's structural steel and the stringers were then hung from the rods before the stair treads and risers were placed between the stringers to form the staircase. The threaded rods were placed into clips that were attached to the structural steel and secured on both the top and bottom with washers and nuts. When installing the staircase, the nuts that secured the threaded rods were left loose so that the rods could be adjusted as the stairs were installed. The nuts were not tightened until final height adjustments were made and the stringers were plumb.

Fegel was in the process of aligning the stairs with the use of a hammer when he exposed his coworker to the effects of Newton's First Law. One of the threaded rods came loose and tumbled down the elevator shaft, striking Boyle in the back as he worked two floors below. As a result, Boyle sustained injuries, including an L2-L3 disc herniation and several bulging discs.

In January 2001, Boyle commenced an action against 42nd Street and Sciame and asserted claims pursuant to Labor Law §§ 200, 240 (1) and § 241 (6) and common-law negligence. In a second supplemental bill of particulars, dated June 30, 2003, he alleged a claim pursuant to Labor Law § 241-a.

In May 2004, Boyle moved for summary judgment on the Labor Law § 240 (1) and § 241-a claims. 42nd Street and Sciame opposed and cross-moved for summary judgment seeking dismissal of Boyle's complaint. The court initially denied the motion and cross motions for summary judgment on the section 240 (1) claim but upon reargument dismissed Boyle's Labor Law § 240 (1) claim. The court held that since the threaded rod that struck Boyle was not being "hoisted or secured" at the time of the accident, section 240 (1) was not applicable.

The motion court erred in vacating its initial determination. The accident clearly falls within the purview of the statute inasmuch as plaintiff was struck by a falling object that had been inadequately secured (*Outar v City of New York*, 5 NY3d 731 [2005]; *see also Tavarez v Sea-Cargoes*, 278 AD2d 94 [2000] [the purpose of section 240 (1) is to safeguard a worker from injury caused by an inadequate protective device designed to shield him from the fall of object or person], citing *Carroll v Timko Contr. Corp.*, 264 AD2d 706 [1999] [no section 240 (1) liability because "plaintiff was not working at an elevated worksite, nor was he *struck by an object positioned at a higher level*" (emphasis added)]).

Labor Law § 240 (1) was enacted "in recognition of the exceptionally dangerous conditions posed by elevation differentials at work sites . . . for workers laboring under unique gravity-related hazards" (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491 [1995]). The Court of Appeals has recognized the hazards as those related to the effects of gravity in two specific construction site situations: first, where there is "a difference between the elevation level of the required work and a lower level"; and second, where there is "a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]).

Defendants' assertion that the claim was properly dismissed because the threaded rod that struck Boyle was not being hoisted or secured at the time of the accident is without merit since it is based on a misreading of *Narducci v Manhasset Bay Assoc.* (96 NY2d 259, 267-268 [2001] [plaintiff must show that the object fell, while being hoisted or secured, because of the absence or inadequacy of a safety device of the kind enumerated

in the statute]). In *Narducci*, the plaintiff was working on a ladder when a large piece of glass from an adjacent window frame that was neither being hoisted nor secured fell and injured his arm. The Court held that there was no viable section 240 (1) claim. The full text of its holding in that case states: "the glass that fell on plaintiff was not a material being hoisted or a load that required securing for the purposes of the undertaking at the time it fell . . . . No one was working on the window from which the glass fell, nor was there evidence that anyone worked on that window during the renovation. The glass that fell was part of the pre-existing building structure as it appeared before work began. This was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected" (*id.* at 268).

In other words, the glass did not qualify as the type of falling object contemplated by the statute because it was not an integral part of the renovation/construction work undertaken by plaintiff that involved the hoisting or securing of objects.* Similarly, in *Roberts v General Elec. Co.* (97 NY2d 737, 738 [2002]), a piece of asbestos that was *deliberately* dropped to the ground did not qualify as an object accidentally falling due to the inadequacy of a protective device. Neither *Narducci* nor *Roberts* stands for the proposition that an object must fall at the precise moment of being secured during the work process in order for the statute to apply.

In any event, even if we were to apply the narrowest interpretation possible, the facts of this case indicate that this was precisely a situation where the rods were in the process of being secured and therefore " 'where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected' " (*see Roberts*, 97 NY2d at 738, quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d at 268).

Here, the record establishes that as Fegel and Frame were

---

* The dissent's citing of inapposite case law to critique the use of the word "integral" in this sentence suggests that it was not read as a straight segue from the previous paragraph. "Integral" here was used to convey only that the falling glass window in *Narducci had nothing to do with* the construction/renovation work in which plaintiff was involved. Citing *Martinez v City of New York* (93 NY2d 322 [1999]) and *Adair v Bestek Light. & Staging Corp.* (298 AD2d 153 [2002]) confuses the issue rather than clarifies it since these cases did not involve the types of objects that qualify under the statute, but rather were entirely concerned with plaintiffs' job descriptions (*Martinez*, 93 NY2d at 326 ["we reject the analysis . . . which focuse(s) on whether plaintiff's work (as an environmental inspector) was an integral and necessary part of a larger project"]; *Adair*, 298 AD2d at 153 [plaintiff's work as a stagehand working with overhead lights could not be brought within scope of statute which would have required injury during the erection of the stage]).

installing the stairs on the building's 8th floor, a threaded rod, which had *not yet* been tightened, came loose and fell two stories striking Boyle in the back. The record further establishes that the rods were part of the installation of a staircase. This was an integral part of the construction work in progress. The record also establishes that the standard way of completing the job was to leave the nuts untightened until the placement of the stringers, threads and risers; at which point the nuts would be tightened, and thus the threaded rod would be firmly secured.

It could not be stated more plainly that, if the nuts were not finally tightened, then the rods which the nuts were securing were not completely "secured" within the meaning of section 240 (1). Pursuant to the provisions of section 240 (1) they should have been completely "secured" or some safety device should have been used in the meantime to prevent the "special hazard" of a gravity-related accident such as "being struck by a falling object that was improperly hoisted or inadequately secured" (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500-501 [1993]).

The other safety device claimed as missing in this case was the two-inch-thick planking or equivalent which plaintiff alleges should have been covering the open shaft as required by Labor Law § 241-a and Industrial Code (12 NYCRR) § 23-1.7 (a) (1), which is the basis of plaintiff's claims pursuant to Labor Law § 241 (6) and § 241-a. However, since it is undisputed that the elevator shaft was uncovered because the open shaft was reasonably necessary to hoist the 10-to-13-foot-long steel stringers from ground level to the building's upper floors by an electric chain hoist which was erected in the shaft, those claims should have been dismissed. Contrary to the motion court's findings, there is no question of fact raised by plaintiffs' attorney's conclusory "position" in his opposing affirmations "that a hole could have and should [have] been made in the planking which would still allow the chain hoist to lift the stair components." There is simply no evidence in the record as to whether, and to what extent, partial planking of the open shaft would have been reasonable. Concur—Saxe, Catterson and Malone, JJ.

Andrias, J.P., and Friedman, J., dissent in part in a memorandum by Andrias, J.P., as follows: Because the majority's failure to dismiss plaintiff's claim pursuant to Labor Law § 240 (1) is predicated upon a misreading of the applicable case law and flawed reasoning, which erroneously attempts to expand the scope of the statute to include "additional bolts" in the enumerated safety devices, I dissent and would also dismiss such claim.

Plaintiff, an ornamental ironworker employed by Archer's,

was injured when a threaded six-foot structural steel rod weighing between 10 and 15 pounds, which was loosely connected to a staircase being installed by plaintiff's coworkers on the eighth floor of a building under construction, came loose and fell down an open elevator shaft striking plaintiff, who was two floors below, in the back. Since it is undisputed that the rod in question was not "being hoisted or a load that required securing for the purposes of the undertaking at the time it fell," Labor Law § 240 (1) does not apply (*Roberts v General Elec. Co.*, 97 NY2d 737, 738 [2002], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001]). For section 240 (1) to apply, a plaintiff must show that the object fell while being hoisted or secured, *because* of the absence or inadequacy of an enumerated safety device (*Narducci* at 268). As correctly found by the motion court, the "additional bolts," which counsel for plaintiff urged would have prevented the threaded rod from falling, are not a safety device "of the kind enumerated in the statute."

The majority's attempt to distinguish *Roberts* and *Narducci* on their facts is unpersuasive as is its reliance upon *Outar v City of New York* (5 NY3d 731 [2005]) and its characterization of the threaded rod that fell and struck plaintiff as an "integral" part of the work being performed by him at the time of the accident.

In *Outar*, the injured plaintiff, who was hurt while working on subway tracks, alleged that he was lifting pieces of track when an unsecured dolly fell from a height and struck him. It is impossible to tell from the Second Department's decision whether the dolly was "being hoisted or was a load that required securing" at the time it fell, and, on a review of submissions, the Court of Appeals merely held that "the dolly was an object that required securing for the purposes of the undertaking (*cf. Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001])." (*Id.* at 732.) Moreover, to the extent that the majority finds defendants' arguments to be based upon a misreading of *Narducci* and its conclusion that the accident clearly falls within the purview of the statute since plaintiff was struck by a falling object that was not secured, *Narducci* specifically held that "for section 240 (1) to apply, a plaintiff must show more than simply that an object fell causing injury to a worker. A plaintiff must show that the object fell, while being hoisted or secured, *because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" (96 NY2d at 268 [citations omitted]). This Court applied this precise formulation in *Cammon v City of New York* (21 AD3d 196, 200 [2005]), a decision illustrating the type of situation requiring the securing of a load. There,

plaintiff, who was injured while preparing to hoist a 200-pound section of 12-inch-by-12-inch timber, presented "unrefuted evidence that the proper use of one or more of the enumerated devices in the section [240 (1)]—ropes, slings or stays—could have prevented the dislodged timber from swinging about wildly and causing his injury." (*Id.*) Thus, as this Court held: "Labor Law § 240 (1) is applicable because the timber was 'a load that required securing for the purposes of the undertaking at the time it fell' " (*id.* [citations omitted]).

In construing the Scaffold Law, which enumerates devices, rather than hazards or circumstances, courts are required to scrutinize two interrelated issues: the work that is being performed by the laborer, and the nature of the protective device and the manner in which it is being utilized (*Hargobin v K.A.F.C.I. Corp.*, 282 AD2d 31, 35 [2001]). Plaintiffs argued in Supreme Court, as they do on appeal, that Labor Law § 240 (1) still controls and was violated because the rod was not properly secured and there was a lack of additional bolts to secure the rod. As noted by the motion court, however, the malfunctioning or absence of a bolt holding a structure in place is the type of hazard normally encountered on a construction site and, while it may be the result of negligence, it does not reflect conduct covered by Labor Law § 240 (1) (*see Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 490 [1995]; *cf. Dias v Stahl*, 256 AD2d 235, 236 [1998]).

Plaintiffs also argued below, in support of their motion to reargue their motion for summary judgment, that "[t]he undisputed evidence establishes the complete absence of safety devices, stays, ropes or additional bolts which would have prevented the threaded rod from falling on plaintiff. Clearly, this case is dead on as the stairs and its components were still under construction. The stringers were not yet attached to the threaded rod. In fact, the stringers were being maneuvered into position at the moment of the accident."

The majority seemingly accepts that argument and is of the opinion that neither *Narducci* nor *Roberts* stands for the proposition that an object must fall at the precise moment of being secured during the work process, in order for the statute to apply. In support of its rationale, the majority contends that the glass in *Narducci* "did not qualify as the type of falling object contemplated by the statute because it was not an integral part of the renovation/construction work [removing steel window frames from the third floor exterior of a fire-damaged warehouse] undertaken by plaintiff that involved the hoisting or securing of objects." However, while plaintiff's work in this

case, hoisting stringers, may be an integral part of the installation of the stairways in the building, the threaded rod that struck plaintiff cannot be brought within the scope of the statute by deeming it "integral," "necessary" or "incidental" to the hoisting of stringers. The Court of Appeals has specifically rejected an "integral and necessary part" test as "improperly enlarg[ing] the reach of the statute beyond its clear terms" (*see Martinez v City of New York*, 93 NY2d 322, 326 [1999]; *see also Adair v Bestek Light. & Staging Corp.*, 298 AD2d 153 [2002]).

Finally, as explained by Judge Hancock in *Rocovich v Consolidated Edison Co.* (78 NY2d 509, 513-514 [1991]), while Labor Law § 240 (1), entitled "Scaffolding and other devices for use of employees," does not purport to specify the hazards to be avoided, it does specify protective means for the hazards to be avoided. Some of the enumerated devices (e.g., "scaffolding," and "ladders") are clearly for the use and protection of persons in gaining access to or working at sites where elevation poses a risk. Other listed devices (e.g., "hoists," "blocks," "braces," "irons" and "stays") are used as well for lifting or securing loads and materials employed in the work. As held by this Court in *Ryan v Morse Diesel* (98 AD2d 615, 615-616 [1983]), where plaintiff tripped and fell on a permanently installed but unfinished interior stairway in a building under construction, Labor Law § 240 (1) was inapplicable since the rule of noscitur a sociis limits the construction of the "other devices" of the statute to the company of the specific words preceding it, and under no construction would the staircase in question be deemed to be a scaffold, hoist, stay, ladder, sling, hanger, block, pulley, brace, iron or rope. The same can be said for the "additional bolts" urged as a safety device by plaintiffs in this case.