[841 NYS2d 249]

Scott Buckley et al., Appellants, v Columbia Grammar and Preparatory et al., Respondents. Kalikow Construction, Inc., Third-Party Plaintiff-Respondent, v Kone Inc., Doing Business as Montgomery Cohen Elevator Co., Third-Party Defendant-Respondent.

First Department, August 16, 2007

**APPEARANCES OF COUNSEL**

*Sacks and Sacks, LLP*, New York City (*Scott N. Singer* of counsel), for appellants.

*Cerussi & Spring, P.C.*, White Plains (*Richard D. Bentzen* of counsel), for Columbia Grammar and Preparatory, respondent.

*Law Office of Carol R. Finocchio*, New York City (*Lisa M. Comeau* of counsel), and *Law Office of Michael F.X. Manning*, Melville, for Kalikow Construction, Inc., respondent.

*DLA Piper Rudnick Gray Cary US, LLP*, New York City (*Gregory J. Samurovich* of counsel), for Kone Inc., respondent.

**OPINION OF THE COURT**

SULLIVAN, J.

This lawsuit arises from an accident on July 21, 2001, at Columbia Grammar and Preparatory School in Manhattan when plaintiff Scott Buckley was injured while he and a coworker were testing the operation of a car platform in the course of installing a new elevator, part of a renovation project at the school.

The injured plaintiff was an elevator mechanic's helper employed by third-party defendant Kone Inc. Pursuant to a written purchase order, Kone had been hired by defendant Kalikow Construction, the project manager, to furnish and install a "Monospace" AC gearless traction passenger elevator designed by Kone. Under the agreement, Kone was to provide all labor, materials and supervision relating to installation. The elevator, as constructed, moved by use of a motor, cables and counterweights housed in a frame that would travel up and down the shaft. At the time of the accident, the rails, counterweight frame, counterweights and motor had been installed. Although the elevator cab itself had not yet been installed, the platform on which it would sit had been. The elevator was designed so that when the car descended, a counterweight frame with partially enclosed weights on top of it would ascend, and vice versa. The Monospace design calls for the counterweights to be notched into their frame.

According to the testimony of the injured plaintiff and Birnbaum, his coworker, at the time of the accident they were bringing the elevator platform down the shaft from the top (eighth) floor to the basement for the first time, using a hand-held control box. Plaintiff was standing in the doorway to the elevator shaft at the basement level and Birnbaum, an elevator mechanic from whom he took his instructions, was at the lobby level. As the counterweight frame was ascending, it hit a nail-like spike, apparently composed of formtie wire, protruding from the wall of the elevator shaft, which damaged the frame, thus causing five of the counterweights to fall out of the compartment housing them. One or more of these counterweights struck plaintiff on his right side.

In a pretrial deposition, Birnbaum testified that he believed the spike had been poured into the concrete. No contractor other than Kone worked in the shaft during the weeks prior to the accident. Kone was responsible for inspecting the interior of the elevator shaft before commencing its onsite work in June

2001. Kalikow's employees walked through the site to monitor progress and safety, but did not test the elevator devices and would not use the elevator until Kone's work was done. It is undisputed that Kalikow did not supervise or control the methods and means of Kone's work.

Four rails inside the elevator shaft were part of the mechanical system that allowed the elevator and counterweights to go up and down, two for the counterweights and two for the elevator cab. These rails were attached to the hoistway walls by brackets. The counterweight frame assembly with the counterweights, each weighing between 50 and 75 pounds, inside the frame was undergoing its initial test at the time of the accident.

Buckley and his wife, suing derivatively, commenced this action against Columbia and Kalikow, alleging negligence and violations of Labor Law §§ 200, 240 (1) and § 241 (6). Kalikow impleaded Kone, which, under the terms of the purchase order, was obligated to indemnify Kalikow. After joinder of issue and the completion of discovery, Kalikow and Columbia separately moved for summary judgment dismissing the complaint. Plaintiffs cross-moved for partial summary judgment on liability under Labor Law § 240 (1). Supreme Court denied the cross motion and granted Kalikow's and Columbia's motions, holding Labor Law § 240 (1) inapplicable because the counterweights did not fall while being hoisted or secured, and their fall was not due to the absence of a statutorily enumerated safety device. It also found that the Industrial Code violations relied upon to support the section 241 (6) claim were factually inapplicable and insufficient. Finally, it determined that plaintiff had no sustainable claims for negligence or a section 200 violation against Kalikow or Columbia because of the failure to show that either of them supervised or controlled the work of either the injured plaintiff or the concrete subcontractor allegedly responsible for the protruding spike.

On appeal, plaintiffs argue that *Outar v City of New York* (5 NY3d 731 [2005]) warrants not only reinstatement of their Labor Law § 240 (1) claim, but summary judgment on liability with respect to that claim. They also argue that they have a valid claim under section 241 (6) based upon violations of Industrial Code (12 NYCRR) §§ 23-1.7 and 23-2.1, and that defendants are liable under Labor Law § 200 based upon their general supervision of the work site and the existence of the protruding spike in the shaftway. None of these claims has merit. Accordingly, we affirm.

■ Labor Law § 240 (1),* popularly known as the Scaffold Law, was designed to protect workers in construction projects against injury from the expected risks of inherently hazardous work posed by elevation differentials at the work site (*Misseritti v Mark IV Constr. Co.*, 86 NY2d 487, 491 [1995]). The use of the types of protective devices enumerated therein is required to prevent injuries from either "a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]; *see Melo v Consolidated Edison Co. of N.Y.*, 92 NY2d 909 [1998]). It imposes absolute liability upon owners and contractors on proof that such a violation of the statute was a proximate cause of the injury sustained (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513 [1985]).

The statute's protections, however, "extend only to a narrow class of special hazards" (*Nieves v Five Boro A.C. & Refrig. Corp.*, 93 NY2d 914, 915-916 [1999]) and "do not encompass *any and all* perils that may be connected in some tangential way with the effects of gravity" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). In order for section 240 (1) to apply, there must be a significant, inherent risk attributable to an elevation differential. The statute does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site (*see Misseritti*, 86 NY2d at 489; *Rocovich*, 78 NY2d at 514; *Gonzalez v Turner Constr. Co.*, 21 AD3d 832 [2005]). Moreover, since a defendant is liable only for the "normal and foreseeable consequences" of its acts (*see Gordon v Eastern Ry. Supply*, 82 NY2d 555, 562 [1993]), a worker who is caused to fall or is injured by the application of an external force is entitled to the protection of the statute only if the application of that force was foreseeable (*see Cruz v Turner Constr. Co.*, 279 AD2d 322 [2001] [electrician injured in fall from ladder caused by slip on lubricant that had dripped onto rungs held entitled to statute's protections since lubrication was commonly used to assist in pulling wires through piping, and

---

\* "All contractors and owners . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

drippage was a foreseeable consequence of work being performed]; *see Nimirovski v Vornado Realty Trust Co.*, 29 AD3d 762 [2006] [statute applicable where foreseeable that pieces of metal that dropped to the floor could strike scaffold on which plaintiff was working and cause it to shake, rendering scaffold inadequate to protect him; additional safety devices necessary]; *Bush v Goodyear Tire & Rubber Co.*, 9 AD3d 252, 253 [2004], *lv dismissed* 3 NY3d 737 [2004] [statute applied because "the absence of a proper safety device created the kind of foreseeable risk" within its contemplation]; *Spaulding v Metropolitan Life Ins. Co.*, 271 AD2d 316 [2000] [worker entitled to protection of statute where ladder used was manifestly inadequate to protect him from foreseeable and inherent elevation-related risk of his work]).

> "Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1). Rather, liability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).

In *Narducci*, the plaintiff was injured when a large piece of glass, not involved in the renovation, fell on him while he was standing on a ladder at the third floor exterior of a building, removing window frames. The falling glass was not being hoisted; nor was it part of a load that required securing for purposes of the work being undertaken. The Court held (at 268-269):

> "This was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected. . . .

> "The absence of a necessary hoisting or securing device of the kind enumerated in Labor Law § 240 (1) did not cause the falling glass here. This was clearly a general hazard of the workplace, not one contemplated to be subject to Labor Law § 240 (1)."

Thus, the determination of the type of protective device required for a particular job turns on the foreseeable risks of harm presented by the nature of the work being performed.

In addition, to establish a prima facie case under section 240 (1), a plaintiff must also establish that the absence of a protective device, or the presence of a defective one, of the type

enumerated in the statute, was a proximate cause of the injuries alleged (*see Felker v Corning Inc.*, 90 NY2d 219 [1997]; *Misseritti v Mark IV Constr. Co.*, 86 NY2d 487 [1995], *supra*). Here, plaintiffs failed to establish that the work involved a significant inherent risk attributable to an elevation differential, that the injury was the foreseeable consequence of failure to provide proper protective devices of the type enumerated in the statute, or that the counterweights that fell on the worker constituted a load being hoisted or that required securing within the contemplation of the statute.

Plaintiffs rely on *Outar v City of New York* (5 NY3d 731 [2005], *supra*) and *Bush v Gregory/Madison Ave.* (308 AD2d 360 [2003]) in arguing that the counterweights were not properly secured at the time of the accident. *Outar* and *Bush* are both factually distinguishable. In *Outar*, the plaintiff, a track worker, was injured when a track dolly routinely used in his work, which had been left completely unsecured on a 5½-foot bench wall adjacent to the work site, fell on him. In *Bush*, an angle iron that had apparently been left unsecured to the wall fell from an elevated work site on the floor above, and struck the plaintiff. In both cases, that the objects in question posed a significant risk of falling on workers was foreseeable. They thus were objects that should have been secured within the meaning of section 240 (1).

Plaintiffs argue that *Outar* represents a change in section 240 (1) jurisprudence—that the statute now applies to stationary objects that require securing, not just to those being hoisted. There has been no change in the law. (*See Narducci*, 96 NY2d at 268 [section 240 (1) inapplicable since glass that fell on plaintiff was "not a material being hoisted or a load that required securing for the purposes of the undertaking at the time it fell"]; *see also Roberts v General Elec. Co.*, 97 NY2d 737 [2002]). What is essential to a conclusion that an object requires securing is that it present a foreseeable elevation risk in light of the work being undertaken. That is what distinguishes the facts here from *Outar* and *Bush*.

In *Boyle v 42nd St. Dev. Project, Inc.* (38 AD3d 404, 408 [2007]), cited by the dissent, a narrowly divided Court held that a threaded, six-foot steel rod, loosely connected to a staircase being installed, which came loose and fell down an elevator shaft, striking the plaintiff, "should have been completely 'secured' or some safety device . . . used . . . to prevent the 'special hazard' of a gravity-related accident such as 'being struck by a falling object that was improperly hoisted or

inadequately secured' " (quoting *Ross,* 81 NY2d at 501). The case is distinguishable since the hazard of a rod, part of an assembly being worked on at a site adjacent to the elevator shaft, falling down the shaft was a foreseeable and inherent elevation-related risk of the work involved.

Here, it was not foreseeable that the counterweights that fell on the injured plaintiff posed an elevation-related hazard inherent in testing the functioning of the elevator platform on the day of the accident. All that was involved was the moving of the platform up and down using a hand-held control unit. At the time, the counterweights were placed in a frame in their intended, eventual resting place in accordance with Kone's design of the elevator and the instructions in the installation manual. The elevator shaft was constructed according to Kone's specifications. As Birnbaum testified, before installing the counterweight rails, he inspected the walls of the shaft and looked for anything projecting from the walls that might impinge on the space where the counterweights would ascend and descend. According to Birnbaum, everything was in proper order.

Thus, it could not reasonably be expected at the time of the testing that the counterweight frame would tilt or move in a way that would cause the counterweights to fall. Such an event was not a foreseeable risk inherent in the testing of the elevator, and as such, did not compel the need for a protective device as contemplated by section 240 (1). Clearly, no such device was contemplated, given the design of the elevator. That some type of bracket was subsequently placed over the top of the counterweight frame does not alter the fact that the risk of the counterweights falling out of their frame was not foreseeable at the time of the accident. "This was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected" (*Narducci,* 96 NY2d at 268; *see also Smith v Le Frois Dev., LLC,* 28 AD3d 1133 [2006] [plaintiff struck by drift pin that fell from a steel beam 20 feet above him]; *Bailey v Young Men's Christian Assn. of Capital Dist.,* 267 AD2d 642 [1999] [plaintiff working at ground level struck by falling object—one of a number of concrete cores removed by workers the previous day]; *Belcastro v Hewlett-Woodmere Union Free School Dist. No. 14,* 286 AD2d 744 [2001] [plaintiff working at ground level struck on head by piece of wood that allegedly fell or was thrown from roof]; *Eberhard v Alexander Cent. School Dist.,* 309 AD2d 1169 [2003]

[brick used to weigh down tarp covering a newly laid section of brick wall, which fell approximately 30 feet striking the worker, not a hazard contemplated by section 240 (1)]).

■ We are all in agreement that the Labor Law §§ 241 (6) and 200 and negligence claims were properly dismissed. Section 241 (6), which imposes a nondelegable duty upon an owner or general contractor to see to it that the construction, demolition and excavation operations at the workplace are conducted so as to provide for the reasonable and adequate protection of the workers (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 350 [1998]), is not self-executing. To establish liability under the statute, a plaintiff must specifically plead and prove the violation of an applicable Industrial Code regulation (*Ross,* 81 NY2d at 502). The Code regulation must constitute a specific, positive command, not one that merely reiterates the common-law standard of negligence (*id.* at 503-504). The regulation must also be applicable to the facts and be the proximate cause of the plaintiff's injury.

Here, plaintiffs rely upon alleged violations of Industrial Code (12 NYCRR) §§ 23-1.7 (a) (1) and 23-2.1 (a) (2), neither of which is applicable, as a matter of law. Section 23-1.7, entitled "Protection from general hazards," provides, in pertinent part:

"(a) Overhead hazards.

"(1) Every place where persons are required to work or pass that is *normally exposed to falling material or objects* shall be provided with suitable overhead protection. Such overhead protection shall consist of tightly laid sound planks at least two inches thick full size, tightly laid three-quarter inch exterior grade plywood or other material of equivalent strength. Such overhead protection shall be provided with a supporting structure capable of supporting a loading of 100 pounds per square foot" (emphasis added).

As plainly expressed, this regulation only applies to places normally exposed to falling material or objects. Thus, where an object unexpectedly falls on a worker in an area not normally exposed to such hazards, the regulation does not apply (*see e.g. Daly v City of New York,* 254 AD2d 214 [1998] [plaintiff, working on a leak, injured when ceiling of underground steam vault collapsed; no evidence that this work was in an area "normally exposed to falling material or objects"]; *see Quinlan v City of*

*New York,* 293 AD2d 262 [2002]; *see also Favia v Weatherby Constr. Corp.,* 26 AD3d 165 [2006]).

Industrial Code § 23-2.1, relating to "Maintenance and housekeeping," provides, in pertinent part:

> "(a) Storage of material or equipment. . . .

> "(2) Material and equipment shall not be stored upon any floor, platform or scaffold in such quantity or of such weight as to exceed the safe carrying capacity of such floor, platform or scaffold. Material and equipment shall not be placed or stored so close to any edge of a floor, platform or scaffold as to endanger any person beneath such edge."

Clearly, although there is a paucity of precedent interpreting this regulation, it does not apply to material and equipment that is not being stored. The few cases that have considered the issue have so held (*see McLaughlin v Malone & Tate Bldrs., Inc.,* 13 AD3d 859, 861 [2004]; *Castillo v Starrett City,* 4 AD3d 320, 321 [2004]).

Labor Law § 200, the codification of the common-law negligence standard, imposes a duty upon an owner or general contractor to provide construction site workers with a safe place to work (*Comes v New York State Elec. & Gas Corp.,* 82 NY2d 876 [1993]). "An implicit precondition to this duty . . . is that the party charged with that responsibility have the authority to control the activity bringing about the injury" (*Russin v Louis N. Picciano & Son,* 54 NY2d 311, 317 [1981]).

Where an alleged defect or dangerous condition arises from a subcontractor's methods over which the defendant exercises no supervisory control, liability will not attach under either the common law or section 200 (*Lombardi v Stout,* 80 NY2d 290 [1992]). Thus, section 200 applies only to owners and contractors who actually exercise control or supervision over the work and had actual or constructive notice of the unsafe condition (*see Singh v Black Diamonds LLC,* 24 AD3d 138 [2005]; *Jehle v Adams Hotel Assoc.,* 264 AD2d 354, 355 [1999]).

Here, it is undisputed that neither Columbia nor Kalikow in any way supervised, directed or controlled the elevator work being performed by the injured plaintiff and Birnbaum on the day of the accident; Kone was exclusively responsible for supervising its employees. That Kalikow may have had general supervisory powers to coordinate the progress of the work and correct any unsafe conditions that came to its attention is insufficient

to establish its liability (*see Singh,* 24 AD3d 138 [2005], *supra; Reilly v Newireen Assoc.,* 303 AD2d 214, 221 [2003], *lv denied* 100 NY2d 508 [2003]).

Faced with this obstacle, plaintiffs argue that the accident arose not out of Kone's methods, but out of a defective condition at the job site, namely, the five-inch spike protruding from the elevator shaft, of which Kalikow should have been aware by virtue of its employees' daily walk-throughs. But the accident did result solely from Kone's methods, over which Kalikow and Columbia undeniably exercised no supervision or control. In any event, while notice of the injury-causing condition is not enough—supervisory control still being necessary to make an owner or general contractor liable under the Labor Law (*McParland v Travelers Ins. Co.,* 302 AD2d 328 [2003])—there is no evidence that either defendant had actual or constructive notice of any inherent defect in the elevator shaft.

We have examined plaintiffs' other arguments and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered June 23, 2005, which granted defendant Kalikow's motion and defendant Columbia's cross motion for summary judgment and denied plaintiffs' cross motion for partial summary judgment on their Labor Law § 240 (1) claim, should be affirmed, without costs or disbursements.

MAZZARELLI, J.P. (dissenting in part). I would modify the order appealed, to the extent of reinstating plaintiffs' Labor Law § 240 (1) claim and granting their cross motion for summary judgment on that cause of action. Plaintiff Scott Buckley, a mechanic's helper, was injured while testing a "Monospace" elevator, which he and his supervisor, Glen Birnbaum, were installing on a construction site.

The work took place in stages. First, Buckley and Birnbaum installed two rails for the elevator and two rails for its counterweights. They then erected a sling to contain the elevator platform. A motor room was constructed on top of the shaftway. After the counterweight frame was installed, cables were attached. Finally, the elevator platform was placed at the main floor level and raised to the top of the shaft, using a hoist.

On the day before the accident, Buckley assembled the counterweights within their frame. Birnbaum inspected the counterweights and confirmed that they were installed cor-

rectly. While most counterweights are secured to their frame by an interlocking rod, the Monospace is designed to have the counterweights notched into their frame, but not secured to it.

The day after completing the installation of the component parts, Buckley and Birnbaum started to test the elevator. As Buckley lowered the elevator platform to the basement where he was standing, Birnbaum heard a scraping sound. He directed plaintiff to stop and reverse the elevator's direction, to determine where the scraping noise was coming from. Buckley, as directed, raised the platform. Birnbaum saw some of the counterweights dislodge and fall into the shaft. He yelled to Buckley to get out of the way. However, Buckley was unable to escape as one or more counterweights fell from the eighth floor, and Buckley was struck. Bones in his right arm and foot were fractured.

At his deposition, Birnbaum testified that after the accident, he observed that the weights became dislodged because they had hit a spike sticking out of the concrete wall. When Birnbaum attempted to put the weights back into their frame, the spike prevented him from doing so.

The IAS court dismissed plaintiffs' section 240 (1) claim. It said it was relying upon *Narducci v Manhasset Bay Assoc.* (96 NY2d 259 [2001]) and *Doucoure v Atlantic Dev. Group, LLC* (18 AD3d 337 [2005]), and that the counterweights were not being "hoisted or secured" at the time of the accident (2005 NY Slip Op 30106[U], at *9). However, I believe the controlling law mandates a different result.

In *Narducci*, the Court of Appeals considered two consolidated appeals. In the first, plaintiff Alex Narducci was removing steel window frames from the third floor exterior of a fire-damaged warehouse. Mr. Narducci was assigned to remove three windows in a row, and he began with the one farthest to the right. As he stood on his ladder, "a large piece of glass from an adjacent window" fell toward him (96 NY2d at 266). Mr. Narducci turned to the right to avoid being hit in the face, but he was severely cut on his right arm. The Court of Appeals noted that plaintiff "did not fall from the ladder, nor did the ladder malfunction in any way" (*id.*).

In the companion appeal (*Capparelli v Zausmer Frisch Assoc.*), Louis Capparelli was assigned to install fluorescent light fixtures in a dropped ceiling grid as part of a building renovation (*id.*). Mr. Capparelli had climbed halfway up an eight-foot stepladder to reach the 10-foot ceiling. He lifted the light

fixture into the grid, so that its edges rested at its sides. Before he had the opportunity to secure the fixture, it fell from the grid, cutting his right hand and wrist.

The Court of Appeals held that neither plaintiff had an actionable claim under Labor Law § 240 (1). As to Mr. Narducci, the Court stated (at 268-269) that:

> "the glass that fell on plaintiff was not a material being hoisted or a load that required securing for the purposes of the undertaking at the time it fell . . . . No one was working on the window from which the glass fell, nor was there evidence that anyone worked on that window during the renovation. . . . *This was not a situation where a hoisting or securing device of the kind enumerated in the statute would have been necessary or even expected.* . . .

> *"The absence of a necessary hoisting or securing device of the kind enumerated in Labor Law § 240 (1) did not cause the falling glass here. This was clearly a general hazard of the workplace, not one contemplated to be subject to Labor Law § 240 (1)."* (Emphasis added.)

In Mr. Capparelli's case, the Court held that section 240 (1) was inapplicable because there was no height differential between the plaintiff and the falling object. The Court specifically stated that "[t]he exclusion made for the *de minimis* elevation differential in this case is appropriate" (*id.* at 270).

Subsequent to *Narducci,* this Court decided *Doucoure,* where the plaintiff construction worker was injured when a piece of concrete debris chipped loose, fell down an elevator shaft, and struck him on the head. We held that there was no liability under section 240 (1) because the concrete chip, like the window in *Narducci,* was not being "hoisted" or "secured" at the time of the accident (18 AD3d at 339).

Subsequent to *Doucoure,* the Court of Appeals decided the case of *Outar v City of New York* (5 NY3d 731 [2005]). The *Outar* plaintiff was a track worker for the New York City Transit Authority. He was lifting and replacing pieces of track when an unsecured dolly, which was used in his work and stored on top of a 5½-foot wall adjacent to his work site, fell and hit him (*see* 286 AD2d 671 [2001]). The Court of Appeals affirmed the Second Department's determination that the accident involved an elevation-related risk necessary to "implicate the special

protections afforded by Labor Law § 240 (1)" (*id.* at 673). Citing *Narducci* (*Capparelli*), the Court of Appeals held that the "elevation differential between the dolly and plaintiff was sufficient to trigger Labor Law § 240 (1)'s protection, and the dolly *was an object that required securing* for the purposes of the undertaking" (5 NY3d at 732 [emphasis added]). The Court of Appeals thus affirmed, as relevant here, that the appropriate inquiry was whether the object causing the injury "required securing," rather than whether it was in the process of being secured at the time of the accident. The Court of Appeals' holding in *Outar* is not a change in the law regarding section 240 (1) cases. Rather, it is a refinement of the State's highest court's interpretation of that section's application. Pursuant to *Outar*, section 240 (1) liability under the "falling object" fact pattern is not limited to cases where an object is in the process of being hoisted at the time of the accident, and is applicable to the facts presented here.

In a case with arguably similar facts, this Court recently held that Labor Law § 240 protected a worker who was injured while installing certain steel components of a metal stairway (*Boyle v 42nd St. Dev. Project, Inc.*, 38 AD3d 404 [2007]). In *Boyle*, plaintiff's coworker was aligning the stairwell when a rod came loose, fell two flights, and struck plaintiff in the back (*id.* at 405). Distinguishing *Narducci*, this Court held that the rods "should have been completely 'secured' or some safety device should have been used . . . to prevent the 'special hazard' of a gravity-related accident such as 'being struck by a falling object that was improperly hoisted or inadequately secured' " (*id.* at 408, quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

As in *Boyle*, the unsecured counterweights in this case posed an elevation-related risk implicating the protections afforded by Labor Law § 240 (1). Whether the manufacturer of the elevator at issue could be subject to a products liability action for designing counterweights that are unreasonably dangerous is not before us. Notwithstanding any right plaintiff may have to sue the manufacturer of the elevator for a design defect, the defendants in this case still have liability under section 240 (1). Their nondelegable duty to protect workers on their construction site from the special dangers posed by "risk[s] inherent in . . . the relative elevation . . . at which materials or loads must be positioned or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]) is independent.

Accordingly, I would find defendants responsible under Labor Law § 240 (1) for injuries caused to plaintiff when he was struck by a number of unsecured counterweights which dislodged and fell more than five flights and fractured plaintiff's right arm and foot (*see Jiron v China Buddhist Assn.*, 266 AD2d 347 [1999]).

MARLOW, BUCKLEY and GONZALEZ, JJ., concur with SULLIVAN, J.; MAZZARELLI, J.P., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered June 23, 2005, affirmed, without costs or disbursements.