## Dolcimascolo v 701 7th Prop. Owner, LLC

2024 NY Slip Op 30782(U)

March 12, 2024

Supreme Court, New York County

Docket Number: Index No. 156779/2018

Judge: Arlene P. Bluth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 14

------------------------------------------------------------------------------X

MICHAEL DOLCIMASCOLO,

|   |   |
|---|---|
| **INDEX NO.** | 156779/2018 |
| **MOTION DATE** | N/A, N/A |
| **MOTION SEQ. NO.** | 003 004 |

Plaintiff,

- v -

701 7TH PROPERTY OWNER, LLC, CNY
CONSTRUCTION 701 LLC,

Defendants.

**DECISION + ORDER ON
MOTION**

------------------------------------------------------------------------------X

HON. ARLENE P. BLUTH:

The following e-filed documents, listed by NYSCEF document number (Motion 003) 121, 122, 123, 124, 125, 126, 127, 128, 129, 156, 157, 158, 159, 160, 165, 167

were read on this motion to/for                        SUMMARY JUDGMENT                        .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 162, 166

were read on this motion to/for                        JUDGMENT - SUMMARY                        .

Both plaintiff's motion for summary judgment (MS 003) and defendants' cross-motion

for summary judgment dismissing plaintiff's complaint (MS 004) are granted in part and denied

in part.

**Background**

Plaintiff is an employee of Navillus Tile, Inc., a subcontractor hired by defendant general

contractor CNY Construction 701 LLC ("CNY").  Navillus supplied a crane for construction

work at a property owned by defendant 701 7th Property Owner ("Owner"). Plaintiff alleges that

he was struck by an I-beam as it was being hoisted, and dropped, from a truck bed.

On the day of the accident, plaintiff worked as a flagman directing pedestrians around the construction zone. His co-worker, Martin Carmody, a signalman, was attempting to direct a 30-foot steel I-beam into a large flatbed truck trailer from approximately 30 floors above the ground. To do this, the truck had to be parked in a corral zone for loading and unloading, and the workers, communicating via radio, used a large crane with hooks to lower the I-beam into the truck bed. The crane operator lowering the beam, Michael Mulligan, was unable to see Carmody, the signalman who stood in the truck, and they had to rely on radio communications from each other to complete the task.

As the beam was lowered, Carmody, who got no help from the truck's driver, attempted to straighten the I-beam into the truck bed alone, placing his hand on the side of the beam. Plaintiff either volunteered, or Carmody requested, two wire slings to secure the beam, which plaintiff claims he provided to Carmody to assist in the unloading process. Thus, although plaintiff was a flagman, he entered the corral zone to deliver the slings. Carmody removed the hooks from the beam and radioed to Mulligan to lift the hooks as the beam was now in place on the truck. Carmody testified he had to radio to Mulligan at least three times because, for an unknown reason, Mulligan did not raise the hooks. Carmody briefly turned away from the beam to check if he was on the right radio channel, and during that time, the hooks were lifted. In the suddenness, one hook struck the flange of the beam, causing the beam to lift and fall off the truck bed.

At the time, plaintiff was standing approximately eighteen feet from the edge of the truck observing the process. According to plaintiff, when the beam slid off the truck toward him, he lifted his hands over his head to protect himself. The beam struck him in the hands, tossing him back against a plywood wall. The beam also hit his legs as it bounced on the ground, forcing

**156779/2018   DOLCIMASCOLO, MICHAEL vs. 701 7TH PROPERTY OWNER, LLC**      **Page 2 of 14**
**Motion No.  003 004**

[* 2]

plaintiff to fall forward on top of the beam. Plaintiff alleges he sustained several severe injuries and was rushed to the hospital. He filed the instant action alleging various labor law violations. Defendants, however, contend that the beam hit the ground first and plaintiff fell on top of it, refuting plaintiff's labor law claims.

*MS 003*

Plaintiff now brings a motion for summary judgment (MS 003) on his Labor Law § 240(1) and 241(6) claims. He contends that the beam was being hoisted and fell from an elevation on top of him. He alleges that defendants failed to properly equip the beam with proper safety devices that would prevent this kind of accident and argues that defendants violated industrial code sections regarding safety devices for hoisting a beam and proper load handling.

In opposition, defendants argue that the beam hit the ground first before plaintiff fell on top of it. Because of this, there is no proper claim under § 240(1) as plaintiff's injuries are not the result of an elevation-related accident. Defendants contend the incident reports from the day of the accident provide that plaintiff fell on top of the beam after it hit the ground. According to defendants, this precludes recovery under § 240(1) as this statute contemplates injuries that flow from the force of gravity. Moreover, defendants assert that the beam fell off the bed of the truck because Carmody and Mulligan had communication issues, not because of any failure of safety devices. Defendants also argue that plaintiff was not authorized to be in the corral as his assigned position that day was to work as a flagman. Furthermore, defendants contend that all Industrial Code violations in the complaint, not just those plaintiff moves on, are not applicable to plaintiff's accident. As to the violations plaintiff moves on, defendants argue that the Industrial

[* 3]

Code sections are inapplicable because the beam was being lowered, not hoisted, and the tools referenced in the relevant code were not being used at the time.

In reply, plaintiff contends that there are no issues of fact relating to the Labor Law § 240(1) claim. Reliance on Carmody's testimony is misleading because he did not witness the accident, he only observed plaintiff after the accident occurred. Additionally, plaintiff disputes the admissibility of the accident reports because none of the individuals from the reports proffered testimony or affidavits establishing admissibility of the reports. Plaintiff further argues that he was not working outside the scope of his flagman duties, as he had performed such work in the past and was offering assistance to his coworker. Finally, plaintiff asserts there are no issues of fact as to Industrial Code violations as defendants' arguments are unsupported while plaintiff relied on expert testimony to demonstrate how defendants violated the Industrial Code.

### MS 004

Defendants also move for summary judgment dismissing the complaint. Defendants contend that plaintiff's injury did not result from an elevation-related risk, therefore any claims under Labor Law § 240(1) should be dismissed. Additionally, defendants argue that plaintiff was not authorized to be in the corral as his assigned duty on the day of the accident was as a flagman. Defendants further assert that plaintiff's claims for violations under the Industrial Code at 12 NYCRR § 23-1.1-1.5, § 23-1.7-1.8, § 23-5.1, § 23-6.1(a)-(e) & (h), § 23-6.2-6.3, § 23-8.1-8.2, § 23-8.4, § 23-9.1, 9.2, 9.6, OSHA regulations, and American National Standards Institute, are insufficiently specific, and that the accident was not caused by a defect in the tower crane. Finally, defendants argue that any claims asserted under Labor Law § 200 should be dismissed as they did not assert actual supervision or control over the work at the construction site.

[* 4]

In response, plaintiff contends that his own testimony refutes defendants' version of events, and instead shows that he was struck by the falling beam and did not fall on top of it. According to plaintiff, Carmody's testimony is irrelevant as he only observed plaintiff after the accident occurred. Plaintiff reiterates his position that the incident reports are not admissible evidence. Additionally, plaintiff maintains that he was not acting outside the scope of his employment, as he was performing work that was ancillary to his duties and assisting his coworker who had requested plaintiff's help. As to his claim for violation of industrial codes, plaintiff contends that defendants do not refute the specific sections of the code that plaintiff references. Finally, plaintiff argues there are questions of fact as to whether CNY exercised supervision and control over the work, as testimony established that CNY hired security to oversee the worksite.

In reply, defendants argue that plaintiff was never struck by the beam, and testimony from his coworkers attests to this fact. Defendants contend that the incident reports are all authenticated by either plaintiff or a representative of CNY. Additionally, defendants contend that plaintiff failed to show a causal nexus between his injury and a failure of a safety device, as the accident was caused by Carmody's inability to communicate with the crane operator. Defendants further argue that plaintiff failed to raise an issue of fact regarding the scope of his employment, as he was clearly not authorized to be inside the corral and Carmody never stated that he requested plaintiff's assistance. Defendants contend that plaintiff expressly stated he is not moving forward on his claims for violation of 12 NYCRR § 23-8.1, the only claims plaintiff attempted to preserve in his response. Therefore, defendants argue that they are entitled to dismissal. Defendants further maintain that the true test for supervision is whether CNY

*exercised* control over the landing of the beam, not whether they simply *had* control. Thus, defendants argue they are entitled to dismissal of the Labor Law § 200 claim.

**Discussion**

To be entitled to the remedy of summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact from the case" (*Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853, 487 NYS2d 316 [1985]). The failure to make such a prima facie showing requires denial of the motion, regardless of the sufficiency of any opposing papers (*id.*). When deciding a summary judgment motion, the court views the alleged facts in the light most favorable to the non-moving party (*Sosa v 46th St. Dev. LLC*, 101 AD3d 490, 492 [1st Dept 2012]).

Once a movant meets its initial burden, the burden shifts to the opponent, who must then produce sufficient evidence to establish the existence of a triable issue of fact (*Zuckerman v City of New York,* 49 NY2d 557, 560, 427 NYS2d 595 [1980]). The court's task in deciding a summary judgment motion is to determine whether there are bonafide issues of fact and not to delve into or resolve issues of credibility (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 505, 942 NYS2d 13 [2012]). If the court is unsure whether a triable issue of fact exists, or can reasonably conclude that fact is arguable, the motion must be denied (*Tronlone v Lac d'Amiante Du Quebec, Ltee,* 297 AD2d 528, 528-29, 747 NYS2d 79 [1st Dept 2002], *affd* 99 NY2d 647, 760 NYS2d 96 [2003]).

*Labor Law § 240(1)*

"Labor Law § 240(1), often called the 'scaffold law,' provides that all contractors and owners . . . shall furnish or erect, or cause to be furnished or erected . . . scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to construction workers employed on the premises" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 499-500, 601 NYS2d 49 [1993] [internal citations omitted]). "Labor Law § 240(1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*id.* at 501).

"[L]iability [under Labor Law § 240(1)] is contingent on a statutory violation and proximate cause . . . violation of the statute alone is not enough" (*Blake v Neighborhood Hous. Servs. of NY City*, 1 NY3d 280, 287, 771 NYS2d 484 [2003]).

The crux of this case is whether plaintiff tripped over the beam after it hit the ground, or whether the beam knocked into him, resulting in his injuries. The only other witness to the accident, Martin Carmody, testified that he "had [his] side to [plaintiff]" as he faced the front of the truck (NYSCEF Doc. No. 128 Carmody Dep. 61:14-62:2-5). Carmody further testifies that all he saw was that plaintiff "fell on top of the beam," (*id.* 46:23). Moreover, Carmody testified that he never saw plaintiff hit the plywood wall (*id.* at 63:14-16).

Alternatively, according to plaintiff, Carmody had his back to plaintiff immediately before the accident (NYSCEF Doc. No. 125 Dolcimascolo Dep. 108:2-3). Plaintiff also contends that, although everything happened very quickly, the beam hit his hands, pushed him into the plywood wall, and then hit the floor (*id.* at 131:17-25).

While Carmody saw the beam hit the ground and plaintiff fall on top of it, he did not see what happened from the time the beam fell off the truck until it hit the ground; this means he missed the exact moments plaintiff claims the beam was hitting him and knocking him into the plywood wall. Although the Court understands that everything happened in a matter of seconds, the papers submitted on this motion indicate that Carmody did not witness the entire accident. And so no one but plaintiff saw the beam knocking him around.

"[W]here a plaintiff is the sole witness to an accident, an issue of fact may exist where he or she provides inconsistent accounts of the accident. . . his or her account of the accident is contradicted by other evidence. . . or his or her credibility is otherwise called into question with regard to the accident," (*Smigielski v Teachers Ins. & Annuity Ass'n of Am.*, 137 AD3d 676, 676, 29 NYS3d 272 [1st Dept 2016] [internal quotations and citations omitted]).

Defendants rely on incident reports from the time of the injury to demonstrate inconsistencies in plaintiff's version of events; however, none of these reports are verified by any of the people who created them and defendants do not submit any affidavits from people who participated in writing the reports. Moreover, plaintiff disagreed with the version of events listed and could not recall participating in the creation of the reports (NYSCEF Doc. No. 138 Dolcimascolo Dep. 39:5-47:16-22). Accordingly, these reports are inadmissible hearsay and do not constitute an issue of fact (*see Figueroa v. Luna*, 281 AD2d 204, 206, 721 NYS2d 635 [1st Dept 2001] [finding that "a motion for summary judgment requires the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action"] [internal citations and quotations omitted]).

Therefore, there is only one version of events upon which this Court can rely, and it is plaintiff's testimony. Carmody did not see the beam between the time it left the truck until it hit

the ground and the written reports are hearsay. On the other hand, plaintiff is consistent with his story in each of his deposition transcripts, his sworn testimony. The beam fell off the truck and hit plaintiff, knocking him into the wall. Obviously, if the beam fell from such a height that plaintiff lifted his hands to protect himself, the beam constituted an elevation-related risk that qualifies for coverage under the scaffold law. Were it not for gravity, the beam would not have fallen off the truck. Therefore, this branch of plaintiff's motion is granted, and summary judgment dismissing this branch of plaintiff's complaint is denied.

### *Scope of Employment*

There is no dispute that plaintiff suffered an injury while engaged in performing construction-related tasks, but this Court does not agree that plaintiff acted beyond the scope of his employment. Whether or not Carmody requested plaintiff's assistance in landing the beam is irrelevant. Plaintiff completed his duties as a flagman and, be it voluntarily or obligingly, grabbed the wire slings for Carmody to secure the beam. Plaintiff's expert testified that such actions are not uncommon in the construction industry (NYSCEF Doc. No. 160 at 3). According to plaintiff's expert, "the fact that plaintiff was not certified to be in the loading zone (because he is not a rigger) does not, in the construction industry, mean that he was not permitted to enter the loading zone" (*id*.). Defendant did not contradict this point with sworn testimony.

It has long been the law that even if a plaintiff is not performing his assigned duties, so long as he is assisting co-workers in related work on the premises, he will still be protected by the scaffold law (*see Roberts v Caldwell*, 23 AD3d 210, 806 NYS2d 8 [1st Dept 2005] [holding that a plaintiff who fell from a ladder doing renovations, although not supposed to be on the ladder, was still protected by Labor Law § 240(1) because he was helping co-workers on the

[* 9]

premises doing renovation-related work]; *Calaway v Metro Roofing and Sheet Metal Works, Inc.* 284 AD2d 285, 286, 727 NYS2d 426, [1st Dept 2001][finding that plaintiff was not acting outside the scope of his employment in throwing chunks of ice off a roof as he had done so just days before the accident]).

To hold otherwise would create scenarios in which laborers cannot assist their coworkers in menial duties, such as fetching a tool, because they would fear that any resulting accident would not be covered by the law. The Court declines to draw an arbitrary line under these circumstances.

### *Labor Law § 241(6)*

"The duty to comply with the Commissioner's safety rules, which are set out in the Industrial Code (12 NYCRR), is nondelegable. In order to support a claim under section 241(6) . . . the particular provision relied upon by a plaintiff must mandate compliance with concrete specifications and not simply declare general safety standards or reiterate common-law principles" (*Misicki v Caradonna*, 12 NY3d 511, 515, 882 NYS2d 375 [2009]). "The regulation must also be applicable to the facts and be the proximate cause of the plaintiff's injury" *(Buckley v Columbia Grammar and Preparatory*, 44 AD3d 263, 271, 841 NYS2d 249 [1st Dept 2007]).

Plaintiff claims there was a violation of 12 NYCRR 23-8.1(e)-(f), which provide:

(e) Load Handling. (3) Where slings are used to hoist material of long length, spreader bars shall be used to space and keep the sling legs in proper balance. . .
(5) In steel erection, when a load is suspended from a mobile crane, tower crane or derrick at two or more points with slings, the eyes of the lifting legs of the slings shall be shackled together and this shackle or the eyes of the shackled slings shall be placed on the hook. Alternatively, the eyes of the lifting legs may be shackled directly to the hoisting block, ball or balance beam. The eyes may be placed on the lifting hook without shackles if the hook is of the safety type.

(f) Hoisting the load. (1) Before starting to hoist with a mobile crane, tower crane or derrick the following inspection for unsafe conditions shall be made: . . . (iii) The hook shall be brought over the load in such manner and location as to prevent the load from swinging when hoisting is started. (iv) The load is well secured and properly balanced in the sling or lifting device before it is lifted more than a few inches. (2) During the hoisting operation the following conditions shall be met: (i) There shall be no sudden acceleration or deceleration of the moving load unless required by emergency conditions. (ii) The load shall not contact any obstruction. . . (6) Mobile cranes, tower cranes and derricks shall not hoist or carry any load over and above any person except as otherwise provided in this Part (rule).

Defendants highlight that 23-8.1(e)(3) is inapplicable because slings were not used to hoist the beam. Plaintiff's expert provides no insight as to whether slings should have been used, and this Court cannot reach its own, independent conclusion. However, this regulation was meant to apply to incidents in which a sling is used to lift a beam, whereas only hooks were used in this instance. Thus, because no sling was used to hoist the beam, 12 NYCRR 23-8.1(e) is inapplicable to plaintiff's claims and it is therefore severed and dismissed.

Defendants further argue that 23-8.1(f) is inapplicable because the beam was being landed, not hoisted. This Court disagrees. As plaintiff's expert explains, "once the hook lifted the steel beam, the beam became a load that had to be hoisted as required by the Industrial Code to ensure that no one was injured," (NYSCEF Doc. No. 160 at 5). According to plaintiff's expert, the hook used to hoist the beam was not brought over the beam to prevent swinging, and in violation of (f)(2)(i)-(ii), the beam swung and ultimately struck the ground (*id*. at 5). The Court agrees that the beam was in the midst of being hoisted and lowered. To only apply this regulation in instances where a beam is being lifted instead of landed contravenes the purpose of this code section. The purpose of the law is to protect workers from objects that are elevated above them, even if those

[* 11]

objects are moving toward the ground. Defendants' argument – that beams have to be lifted according to regulations but those safety regulations do not apply to lowering the beams from the sky – makes no sense. Therefore, defendants' motion for summary judgment dismissing this portion of plaintiff's motion is denied.

### *Defendant's Cross-Motion Dismissing Labor Law § 200*

Labor Law § 200 "codifies landowners' and general contractors' common-law duty to maintain a safe workplace" (*Ross v Curtis-Palmer Hydro-Electric Co.*, 81 NY3d 494, 505, 601 NYS2d 49 [1993]). "[R]ecovery against the owner or general contractor cannot be had unless it is shown that the party to be charged exercised some supervisory control over the operation . . . [A]n owner or general contractor should not be held responsible for the negligent acts of others over whom the owner or general contractor had no direction or control" (*id.* [internal quotations and citation omitted]).

"Claims for personal injury under this statute and the common law fall under two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143-44, 950 NYS2d 35 [1st Dept 2012]).

The central question on this branch of defendants' motion is whether they had supervisory control over plaintiff. Plaintiff admits that 701 7th Property Owner exerted no control over the worksite; however, plaintiff argues that whether or not CNY exercised control is irrelevant, and the only question of fact is whether the contract granted CNY the ability to control the worksite. This Court finds there is a question of fact as to the obligations of CNY.

According to testimony by a CNY representative, CNY did not have a supervisor or foreman assigned to the corral (NYSCEF Doc. No. 127 Latreille Dep. 20:24-21:2). The same representative testified that he was in charge of overseeing all concrete operations in terms of "logistics. . . scheduling. . . directing. . . [and] testing" the quality of the work (*id*. at 13:8-16). Similarly, plaintiff contends that CNY hired security for the premises, suggesting a level of control over the worksite. While a security agency does not control the method and means of the how a job is carried out, contracting for a security agency does demonstrate that CNY took steps to control the worksite itself. It is unclear to what extent CNY did or did not direct plaintiff's duties, as despite the fact that CNY was not present on the day of the accident, the representative testified that "CNY was responsible for scheduling and oversight of the whole project," (*id*. at 121:22-23). To what extent CNY controlled the worksite is best left to a trier of fact. Therefore, this branch of defendants' cross-motion is denied.

Accordingly, it is hereby

ORDERED that plaintiff's motion for summary judgment as to his Labor Law § 240(1) claim is granted; and it is further

ORDERED that plaintiff's motion for summary judgment as to his Labor Law § 241(6) claim is granted only with respect to 12 NYCRR 23-8.1(f); and it is further

ORDERED that defendants' motion for summary judgment dismissing plaintiff's claim under Labor Law § 240(1) is denied; and it is further

ORDERED that defendants' motion for summary judgment dismissing plaintiff's claim under Labor Law § 241(6) is granted with respect to 12 NYCRR § 23-1.1-1.5, § 23-1.7-1.8, §

23-5.1, § 23-6.1(a)-(e) & (h), § 23-6.2-6.3, § 23-8.1(e) & 8.2, § 23-8.4, § 23-9.1, 9.2, and 9.6;

and it is further

ORDERED that defendants' motion for summary judgment dismissing plaintiff's claim

under Labor Law § 200 is denied.

| 3/12/2024 | | |
| --- | --- | --- |
| **DATE** | | **ARLENE P. BLUTH, J.S.C.** |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | REFERENCE |