[799 NYS2d 455]

WILLIE CAMMON, Appellant, v CITY OF NEW YORK et al., Respondents.

ANJAC ENTERPRISES, INC., Third-Party Plaintiff-Respondent, v MACRO ENTERPRISES, INC., Third-Party Defendant-Respondent.

First Department, July 21, 2005

### APPEARANCES OF COUNSEL

*Cappiello Hofmann & Katz, P.C.*, New York City (*Paul T. Hofmann* of counsel), for appellant.

*Morris, Duffy, Alonso & Faley, LLP*, New York City (*Yolanda L. Ayala* and *Kevin G. Faley* of counsel), for City of New York and another respondents.

*Freehill Hogan & Mahar LLP*, New York City (*John F. Karpousis* of counsel), for Macro Enterprises, Inc., respondent.

### OPINION OF THE COURT

ANDRIAS, J.P.

The accident occurred on January 14, 1992, while plaintiff was working on a floating raft, or float stage, that was tied to a dock at the Hunts Point Sanitation Department Transfer Station in the Bronx. The City, which owned the transfer station, had contracted with defendant Anjac Enterprises, Inc. to perform structural repairs, and Anjac had subcontracted repair of the transfer station's fender system to plaintiff's employer, third-party defendant Macro Enterprises, Inc. Behind the float stage was a work barge that acted as a platform for a mobile crane used for removing old timbers and replacing new timbers on the fender system. At the time of the accident, plaintiff was standing on the float stage and removing a horizontal, eight-foot, 200-pound section of 12-inch by 12-inch timber, that was about a foot or so above plaintiff's head as he worked.

Plaintiff used a chain saw to cut the timber and wrapped a chain that was attached to the crane's cable around the timber so that he could lift it out after he had finished cutting it off. He had finished cutting off one side of the timber and was starting on the other side, when the work barge was rocked by a large wave generated by a passing tugboat. The rocking barge caused the cable that plaintiff had wrapped around the timber to

tighten; the cable went up and the timber was "snatched out" of the fender system and propelled about 10 feet into the air. The timber swung back and forth, hitting plaintiff on the head, and slamming him against the barge, resulting in an injury to his back. Plaintiff had not yet signaled to the crane operator to lift the timber since he was still in the process of cutting it.

There was no tag line connected to the piece of timber that plaintiff was cutting. Plaintiff explained that a tag line is a line that is hooked onto each end of a piece of timber and acts as a guide. Other than the chain connected to the timber that was being cut, there was nothing to hold it in place. Plaintiff also testified that a spud barge is a barge with pipes attached to it that go down into the river bottom to stabilize the barge. No spud barge was in use that day.

Responding to interrogatories, the jury found, as relevant to this appeal, that the City and Anjac failed to provide proper protection to plaintiff by failing to provide a hoist or other devices, but this failure was not a substantial factor in causing plaintiff's injuries; that Macro did not fail to provide proper protection to plaintiff by failing to provide a hoist or other devices; and that, before starting to hoist, the timber was not properly balanced and well secured in the lifting device, and this was a failure by the City, Anjac and Macro to use reasonable care, which was a substantial factor in causing plaintiff's injuries.

In setting aside the jury's verdict in favor of plaintiff on his Labor Law § 241 (6) claim, the trial court found that, although the jury determined that the City and Anjac failed to provide proper protection to plaintiff, it also determined that neither the City's nor Anjac's failure was a substantial factor in causing plaintiff's injuries. As to plaintiff's motion for a directed verdict on his Labor Law § 240 (1) claim, the court found that the section was applicable, but that the jury found that defendants' failure to provide proper protection to plaintiff was not a substantial factor in causing plaintiff's injuries.

To make a case under Labor Law § 241 (6), plaintiff must prove that defendants violated a rule or regulation of the Commissioner of Labor that sets forth a specific standard of conduct (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-505 [1993]). Industrial Code (12 NYCRR) § 23-8.1 (f) (1) (iv) provides, in pertinent part, that

"[b]efore starting to hoist with a mobile crane . . .

the following inspection for unsafe conditions shall be made . . .

"(iv) The load is well secured and properly balanced in the sling or lifting device before it is lifted more than a few inches."

The jury found that before starting to hoist, the timber was not properly balanced and well secured in the lifting device, that defendants failed to use reasonable care in this regard, and that such failure was a cause of plaintiff's injury.

On appeal, plaintiff argues that, in setting aside the verdict, the court erroneously overlooked the jury's findings. Defendants do not dispute that the court misstated the jury's findings in this regard and concede that, in granting defendants' posttrial motion, the court relied on the wrong regulation. They argue, however, that the regulation is not sufficiently specific to support a Labor Law § 241 (6) claim and is, in any event, inapplicable to the facts of this case.

Although no court has squarely addressed the issue of whether section 23-8.1 (f) (1) (iv) is specific enough to support a Labor Law § 241 (6) claim (*see e.g. Jacome v State of New York,* 266 AD2d 345, 347 [1999]; *Puckett v County of Erie,* 262 AD2d 964, 965 [1999]), we find that the regulation, which requires an inspection to ensure that a "load is well secured and properly balanced in the sling or lifting device before it is lifted more than a few inches," is not merely a general safety standard, but sets forth a specific standard of conduct.

Defendants further argue that, even if specific enough, the regulation is inapplicable because plaintiff was still in the process of cutting the timber and had not yet signaled to the crane operator to lift it. Thus, they argue, the timber was not being hoisted or lifted at the time of the accident so as to implicate the regulation. Such argument, however, overlooks the regulation's specific requirement that "[b]efore" a load is hoisted, it must be well secured and balanced in the sling or lifting device. In this case, plaintiff had attached a hook from the crane to a chain and had wrapped the chain around the timber. While plaintiff was not ready to hoist the timber at the precise moment the accident occurred, the jury could rationally conclude that he was preparing to hoist. Plaintiff's expert testified that instead of using a single chain, the timber should have been properly balanced by the use of a two-part balanced spreader while plaintiff was cutting it. Thus, there was suf-

ficient evidence to support the jury's finding that the regulation was violated and its verdict, finding in favor of plaintiff on his Labor Law § 241 (6) claim, should be reinstated.

As to his Labor Law § 240 (1) claim, plaintiff contends that, inasmuch as it was undisputed that he was struck by an airborne piece of timber that was inadequately secured, he was entitled to a directed verdict. Defendants counter that section 240 (1) is inapplicable because the timber was not being hoisted at the time it fell; there is no evidence that the crane malfunctioned; and plaintiff was not struck by a falling object but by a horizontally moving object.

Labor Law § 240 (1) applies to tasks that, inter alia, involve a significant inherent risk "because of the relative elevation . . . at which materials or loads must be positioned or secured" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]). "Thus, for section 240 (1) to apply, . . . [a] plaintiff must show that the object fell, while being hoisted or secured, *because of* the absence or inadequacy of a safety device of the kind enumerated in the statute" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001]). Whether a violation of section 240 (1) was a contributing cause of the accident is generally a jury question (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 524 [1985]), and "a directed verdict on the issue of liability is appropriately limited to those cases in which the only inference to be drawn from the evidence is that a failure to provide appropriate protective devices is the proximate cause of the plaintiff's injuries" (*Weber v 1111 Park Ave. Realty Corp.*, 253 AD2d 376, 377 [1998], citing *Zimmer* at 524).

■ Here, Labor Law § 240 (1) is applicable because the timber was "a load that required securing for the purposes of the undertaking at the time it fell" (*Narducci*, 96 NY2d at 268; *see also Orner v Port Auth.*, 293 AD2d 517 [2002]; *Outar v City of New York*, 286 AD2d 671, 672 [2001]). Defendants' claim that the timber only moved laterally or horizontally is not supported by the record. Plaintiff testified that the timber went up in the air at least 10 feet and struck him from above. Plaintiff also presented unrefuted evidence that the proper use of one or more of the enumerated devices in the section—ropes, slings or stays—could have prevented the dislodged timber from swinging about wildly and causing his injury. Plaintiff's expert testified that the sling used here, a single chain wrapped around the timber, was inadequate and that a two-part spreader sling should have been used. Plaintiff was not provided with any

other safety device. Notably, the jury found that defendants failed to provide plaintiff with proper protection. Since the sling provided was not an adequate safety device for the task plaintiff was performing, and he was not provided with any other safety devices, defendants are absolutely liable under section 240 (1) (*see Kadoic v 1154 First Ave. Tenants Corp.*, 277 AD2d 66 [2000]; *Dunn v Consolidated Edison Co.*, 272 AD2d 129 [2000]; *Cosban v New York City Tr. Auth.*, 227 AD2d 160 [1996]).

That the accident was precipitated by a "rogue wave" does not change the result inasmuch as, regardless of the precise manner in which the accident occurred, a defendant is not absolved from liability where, as here, a plaintiff's injuries are at least partially attributable to the defendant's failure to provide protection as mandated by the statute (*see Laquidara v HRH Constr. Corp.*, 283 AD2d 169 [2001]). Accordingly, plaintiff is entitled to a directed verdict on his Labor Law § 240 (1) claim.

Finally, were we not reinstating the verdict on the section 241 (6) claim, a new trial on such claim would be warranted inasmuch as the court erroneously failed to charge other applicable provisions of the Industrial Code, specifically section 23-8.1 (c), which requires that "[a] firm footing shall be provided for every mobile crane, tower crane and derrick," and section 23-8.2 (c) (3), which requires the use of tag lines.

The court should also not have limited its instruction regarding Labor Law § 240 (1) to the failure to provide a "hoist" to plaintiff, and should have charged the jury, as requested by the plaintiff, on the failure to provide "slings," "ropes" and "stays." Defendants do not dispute that the court should have charged the jury on the enumerated devices, but contend that the failure to do so was harmless inasmuch as the verdict sheet, which asked the jury whether the defendants "fail[ed] to provide proper protection to plaintiff by failing to provide a hoist *or other devices*" (emphasis added) cured any deficiency in the charge. However, we would not consider the error harmless.

The interrogatory provided the jury with no guidance as to the enumerated devices required by the statute. Moreover, it was plaintiff's contention that the other enumerated devices would have provided him with better protection. Since the devices mentioned by plaintiff offered a different kind of protection, the court's reference to only the hoist improperly deprived plaintiff of another theory under which the jury could find liability. Notably, defendants stressed that the hoist itself was not defective and that the accident was caused by a rogue wave.

Thus, the court's charge may have negatively influenced the jury's determination that the failure to provide proper protection was not a proximate cause of the accident (*cf. Nestorowich v Ricotta,* 97 NY2d 393, 400-401 [2002]).

Accordingly, the order of the Supreme Court, Bronx County (Janice L. Bowman, J.), entered November 12, 2003, after a jury trial, which, insofar as appealed from, denied plaintiff's post-trial motion, pursuant to CPLR 4404, for judgment notwithstanding the jury's verdict on his claim pursuant to Labor Law § 240 (1) and granted defendants' cross motion to set aside the jury's verdict on plaintiff's Labor Law § 241 (6) claim, should be reversed, on the law, without costs, defendants' cross motion denied and plaintiff's motion granted, the jury's verdict with respect to plaintiff's Labor Law § 241 (6) claim reinstated, its verdict with respect to plaintiff's Labor Law § 240 (1) claim vacated and plaintiff awarded judgment in his favor on such claim. The Clerk is directed to enter judgment in favor of plaintiff in the amount of damages as awarded and apportioned by the jury. Appeal from order, same court and Justice, entered on or about April 8, 2004, which denied plaintiff's motion to renew and reargue, should be dismissed, without costs, inasmuch as no appeal lies from an order denying reargument.

SAXE, SULLIVAN, ELLERIN and SWEENY, JJ., concur.

Order, Supreme Court, Bronx County, entered November 12, 2003, reversed, on the law, without costs, defendants' cross motion to set aside the jury's verdict on plaintiff's Labor Law § 241 (6) claim denied and plaintiff's motion for judgment notwithstanding the jury's verdict on his Labor Law § 240 (1) claim granted and plaintiff awarded judgment in his favor on such claim. The Clerk is directed to enter judgment in favor of plaintiff in the amount of damages as awarded and apportioned by the jury. Appeal from order, same court, entered on or about April 8, 2004, dismissed, without costs.