| |
|---|
| **Woodward v J.T. Magen & Co., Inc.** |
| 2025 NY Slip Op 30105(U) |
| January 13, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 156960/2017 |
| Judge: Judy H. Kim |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:** <u>HON. JUDY H. KIM</u> | **PART** 04 |
| *Justice* | |

-------------------------------------------------------------------------------X

ROBERT WOODWARD,

                    Plaintiff,

    - v -

J.T. MAGEN & COMPANY, INC., NBCUNIVERSAL MEDIA, LLC,TISHMAN SPEYER PROPERTIES, L.P.,

                Defendants.

-------------------------------------------------------------------------------X

J.T. MAGEN & COMPANY, INC.

              Third-Party Plaintiff,

     -against-

ATLAS-ACON ELECTRIC SERVICE CORP.,

             Third-Party Defendant.

-------------------------------------------------------------------------------X

**INDEX NO.** 156960/2017

**MOTION DATE** 12/14/2021, 02/01/2022, 01/28/2022

**MOTION SEQ. NO.** 002 003 004

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595231/2018

The following e-filed documents, listed by NYSCEF document number (Motion 002) 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 104, 106, 133, 134, 135, 136, 137, 138, 158

were read on this motion for           <u>SUMMARY JUDGMENT</u> .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 105, 107, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 156, 157

were read on this motion for           <u>SUMMARY JUDGMENT</u> .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 139, 140, 141, 142, 154, 155, 159, 160, 161, 162, 163, 164

were read on this motion for           <u>JUDGMENT - SUMMARY</u> .

Motion sequences 002, 003, 004 are consolidated for disposition and upon the foregoing

documents, plaintiff's motion for summary judgment is denied, defendants' motion for summary

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.       **Page 1 of 17**
Motion No.  002 003 004

1 of 17

[* 1]

judgment dismissing the complaint is granted, in part, J.T. Magen & Company, Inc.'s motion for summary judgment on its third-party complaint is denied, and Atlas-Acon Electric Service Corp.'s motion for summary judgment dismissing the third-party complaint (mot seq 003) is denied.

## FACTUAL BACKGROUND

This Labor Law action arises from plaintiff's trip and fall on January 7, 2015, while working as a journeyman electrician employed by Atlas-Acon Electric Service Corp. ("Atlas") in connection with the renovation of the mezzanine at 30 Rockefeller Center, New York, New York (the "Building"). Tishman Speyer Properties L.P. ("Tishman") is the managing agent of the Building. Defendant NBC Universal Media LLC ("NBC Universal") retained defendant J.T. Magen as the construction manager for the renovation. J.T. Magen & Company, Inc. ("J.T. Magen") retained plaintiff's employer, Atlas to perform certain electrical work.

The mezzanine in question is made up of three connected areas, a round "rotunda" area and "lounge with a space in between measuring seventy to eighty feet long and twelve to fourteen feet wide, which NBC Universal refers to as the 'Gallery.'" In the center of the Gallery was an inlay, or "cutout" of poured concrete, measuring four to six feet wide and approximately fifty feet long. It is undisputed that, at the time of the accident, the stone inlay was not flush with the floor because the terrazzo had not yet been installed along the sides of the inlay. Once the terrazzo was installed, the two surfaces would be flush.

### EBT of Robert Woodward

On the day in question, plaintiff was carrying a box of tools and supplies to perform work on the far side of the mezzanine, which he accessed through the Gallery. At that time, work was being performed in the Gallery, with workers "all over the place" (NYSCEF Doc. No. 116 [Woodward EBT at pp. 71, 73, 89, 126-127]). To enter the Gallery, plaintiff had to duck under a

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 2 of 17

[* 2]

scaffold's horizontal cross-brace at the Gallery's entrance (Id. at pp. 94, 109, 117-119). He did so without issue (Id. at pp. 119-120). He then walked forward with his toolbox in his hands and, after taking one to two steps, plaintiff's foot landed in the inlay, which was six to eight inches deep, and he tripped and fell (Id. at pp. 90-91, 96, 124, 127-130). Plaintiff testified that the inlay, rather than the scaffold, was the sole cause of his fall (Id. at p. 149).

### EBT Testimony of William Kurpis

William Kurpis, Atlas's General Foreman, testified that only he directed and supervised the manner in which Atlas workers performed the electrical work (NYSCEF Doc. No. 79 [Kurpis EBT at pp. 38-39]), though he spoke with J.T. Magen's project manager, Mark Hackett, and another J.T. Magen employee every day about scheduling and other issues, including safety issues (Id. at p. 34).  Kurpis testified, in pertinent part, as follows:

Q At any point in time, did you  consider that inlay a safety hazard?

A Could I consider it a safety? It would be one of the safety issues on the job, you know. I would say yes, you know, but it was -- Yes. I would say yes. It would be a safety issue.

Q Now, as a safety issue, is that something that you brought to the attention of J. T. Magen?

A I would say it was discussed at a safety meeting. It was discussed.

Q What was discussed?

A That that area that we were working in was -- had to be --  Well, it had to be addressed.

Q For what reason?

A For being really just, you know, not really a safe place to go up and down.

Q. Are you talking about the stairwell or the inlay or something else?

A The stairwell was fine. It was just coming out of the stairwell.

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**          **Page 3 of 17**
  **Motion No.  002 003 004**

3 of 17

[* 3]

Q Was that a discussion you had with Mr. Hackett or someone else?

A Do not recall.

Q Was that a discussion that occurred more than once?

A I do not recall.

(Id. at pp. 61-62).

Q. To the best of your recollection, did any of the Atlas workers have any complaints with respect to the inlay?

A Yes.

Q Do you recall who that was?

A Some of the men on the job.

Q What were those complaints?

A That it was uneven and it was getting very hectic to come out of the stairway.

Q What was uneven?

A The inlay, the stairwell. We had looper tubes coming up sometimes. It was just very -- it was just a very busy area because of the job condition.

Q Did you relay those particular complaints to anyone in particular, other than what you've already testified to?

A That it was a busy area?

Q About the inlay.

A Well, it was definitely mentioned to J. T. Magen.

Q And that's the one conversation you testified to with Mr. Hackett, correct?

A Right.

Q Anything other than that is what I'm asking?

A Any other condition, other than that?

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 4 of 17**

Q Any other time you discussed the inlay, the complaints. You said Atlas workers brought complaints to you about the inlay. I'm asking you if you related those complaints to J. T. Magen in any conversations, other than that one conversation you had with Mark Hackett?

A I would say it was mentioned to his -- the number two that he had there. I forget the gentleman's name, too. It was back and forth with both of them.

(Id. at pp. 86-88).

### EBT of Mark Hackett

Mark Hackett, J.T. Magen's superintendent at the work site, testified that he instructed the supervisors of various subcontractors as to site safety but did not direct their workers in the performance of their work (NYSCEF Doc. No. 77 [Hackett EBT at p. 33]). He further testified that he did not recall the inlay being discussed during any safety meetings (Id. at p. 35).

### Affidavit of Mark Hackett

Defendants also submit an affidavit of Mark Hackett attesting as follows:

I am unaware of any accidents at the Project occurring prior to the plaintiff's accident on January 7, 2015, involving the stone inlay. I also do not recall receiving any complaints regarding the presence of the stone inlay prior to the plaintiff's accident on January 7, 2015. Based on my position as Superintendent I would have been made aware of such a complaint or accident.

I have reviewed J.T. Magen's records, including the safety folder, concerning this Project and there were no complaints regarding the inlay prior to the time of the plaintiff's accident.

During the Project, I met with representatives from NBC Universal to discuss and review the progress of the work and to review change orders. Prior to the accident, NBC Universal did not supervise, direct or control the work being performed by J.T. Magen or its subcontractors.

During the Project, I met with representatives from Tishman Speyer with respect to coordinating access in and out of 30 Rockefeller Plaza. Prior to the plaintiff's accident, Tishman Speyer did not supervise, direct or control the work being performed by J.T. Magen or its subcontractors in connection with the Project.

(NYSCEF Doc. No. 121 [Hackett Aff. at ¶¶7-9]).

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 5 of 17**

## Affidavit of Paul Ridguard

Paul Ridguard, employed by Tishman as the General Manager for 30 Rockefeller Plaza since September 2020, submitted an affidavit stating:

> In 2015, pursuant to a Facilities Management Agreement, Tishman Speyer was also the "Manager" for the National Broadcasting Company, Inc. ("NBC"), the owner of certain condominium floors in the Building.
>
> …
>
> I have been advised by counsel for the defendants in this case that the plaintiff claims that he was in an accident on January 7, 2015, while working in a portion of the mezzanine of the Building demised to NBC Universal, which involved among other things, renovation of such portion of the mezzanine ("the Project").
>
> The portion of the mezzanine in question falls under the Facilities Management Agreement.
>
> I have also been advised by counsel for the defendants that NBC Universal Media, LLC retained J.T, Magen & Company Inc. as the Construction Manager for the Project.
>
> Tishman Speyer did not have involvement in the construction work during the Project. Tishman Speyer did not perform any construction work at the Project.
>
> Tishman Speyer did not supervise, direct or control any of the work at the Project.
>
> Tishman Speyer did not inspect the construction site for any conditions that could be unsafe for workers at the Project.
>
> I have reviewed Tishman's Speyer's records and Tishman Speyer does not have records of any complaints made by any workers at the Project.

(NYSCEF Doc. No. 124 [Ridguard Aff. at ¶¶4, 7-13]

On August 3, 2017, plaintiff commenced this action by summons and complaint asserting claims under Labor Law §§200, 241-a, and 241(6)—predicated on violations of Industrial Code Rules §§23-1.7(e) and 23-2.1(1)—as well as common law negligence. On March 22, 2018,

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 6 of 17**

[* 6]

6 of 17

defendants commenced a third-party action against Atlas[1] for contractual indemnification and breach of contract for failure to procure liability insurance.[2]

Plaintiff now moves for summary judgment on its complaint. Defendant opposes and separately moves for summary judgment dismissing the complaint, arguing that no claim under Labor Law §241(6) lies because the Industrial Code violations relied upon by plaintiff—section 23-1.7(e)(1) and (2)—relate to tripping hazards in passageways and work areas and are therefore inapplicable here and, in any event, are precluded because the inlay was integral to the work being performed on the mezzanine. Defendants further argue that no claim under Labor Law §200 lies because they did not create the purported defective condition or supervise Atlas or Port Morris Tile & Marble Corp. (which performed the inlay work) and because the height differential created by the inlay was either so minor as to constitute a "trivial" defect or was an open and obvious condition that was not inherently dangerous.

J.T. Magen also moves for summary judgment on its third-party claim for contractual indemnification against Atlas. Atlas opposes and moves separately to dismiss the entire third-party complaint, arguing that no contractual indemnification lies because plaintiff's injury was unrelated to the electrical work performed by Atlas and was not due to any negligence on the part of Atlas. Atlas further asserts that the breach of contract claim must be dismissed because it has established through documentary evidence that it obtained the insurance required under its contract with J.T. Magen.

---

[1] While Port Morris Tile & Marble Corp. was initially named a third-party defendant, defendants discontinued that action as against it by stipulation dated June 17, 2021 (NYSCEF Doc. No 64).

[2] Contrary to defendants' contention, the third-party complaint does not include a claim for contribution against Atlas.

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 7 of 17**

## DISCUSSION

"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [internal citations omitted]).

*Plaintiff's Motion for Summary Judgment*

Plaintiff's motion for summary judgment on his Labor Law §241(6) claim is denied. That statute provides that

> All contractors and owners and their agents, … when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> …
>
> (6) All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places

(Labor Law §241[6]).

To establish defendants' liability under Labor Law § 241(6), a plaintiff "must prove that defendants violated a rule or regulation of the Commissioner of Labor that sets forth a specific standard of conduct" which violation proximately caused plaintiff's injuries (Cammon v City of New York, 21 AD3d 196, 198 [1st Dept 2005] citing Ross v Curtis-Palmer Hydro-Elec. Co., 81

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 8 of 17

NY2d 494, 501-505 [1993]). Here, plaintiff relies on Industrial Code §§23–1.7(e)(1) and (2), which provide that:

> (1) Passageways. All passageways shall be kept free from accumulations of dirt and debris and from any other obstructions or conditions which could cause tripping. Sharp projections which could cut or puncture any person shall be removed or covered.

> (2) Working areas. The parts of floors, platforms and similar areas where persons work or pass shall be kept free from accumulations of dirt and debris and from scattered tools and materials and from sharp projections insofar as may be consistent with the work being performed.

There is no dispute that Section 23-1.7(e) is "sufficiently concrete and specific in its requirements to support" a Labor Law §241(6) claim (Smith v McClier Corp., 22 AD3d 369, 370 [1st Dept 2005]). Defendants argue that no claim lies under either provision because the Gallery was not a "passageway" under Industrial Code §23–1.7(e)(1) and plaintiff did not fall on an accumulation of dirt or debris or due to scattered tools and materials or a sharp projection as contemplated by Industrial Code §23–1.7(e)(2).

The Court agrees that the record evidence establishes that the Gallery was not a "passageway" within the intendment of the Industrial Code. While the Code does not provide a formal definition of this term, courts have looked to the common understanding of a passageway as "a typically long narrow way connecting parts of a building," or "a defined walkway or pathway used to traverse between discrete areas as opposed to an open area" in determining the provision's application (Pianoforte v New York City Housing Auth., 2022 NY Slip Op 30166[U], 16 [Sup Ct, New York County 2022] [internal citations and quotations omitted], revd sub nom. Pianoforte v New York City Hous. Auth., 2023 NY Slip Op 02192 [1st Dept 2023]). Here, the Gallery was, at a minimum, an 840 square foot room in which work was being performed and therefore properly understood as an open work area (See e.g., Canning v Barney's New York, 289 AD2d 32, 33 [1st

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 9 of 17

9 of 17

[* 9]

Dept 2001] [main floor of a building under construction was open work area rather than passageway]; Burkoski v Structure Tone, Inc., 40 AD3d 378, 379 [1st Dept 2007] [room approximately 18 feet by 20 feet in which people from other trades working was open work area rather than passageway]). The presence of the 200 to 300 square foot inlay in the middle of the Gallery does not change the character of this space (See Carboy v Cauldwell-Wingate Co., Inc., 2006 WL 6103039 [Sup Ct, NY County 2006] [future lobby of a fitness center where plaintiff fell into 300 square foot hole was an open working area] revd in part on other grounds, 43 AD3d 261 [1st Dept 2007]).

Even assuming, for the sake of argument, that the scaffolding and inlay created a passageway within the Gallery by narrowing the space in which plaintiff could walk (See e.g., Lois v Flintlock Constr. Servs., LLC, 137 AD3d 446, 447 [1st Dept 2016]), Industrial Code §23–1.7(e)(1) would still not be implicated, because this provision "concerns debris in passageways" (Sancino v Metro. Transportation Auth., 184 AD3d 534, 534 [1st Dept 2020]; see also O'Sullivan v IDI Const. Co., Inc., 28 AD3d 225 [1st Dept 2006], affd, 7 NY3d 805 [2006]), and plaintiff's fall was due to a height differential between the floor and inlay.

Neither does Industrial Code §23-1.7(e)(2) apply, as plaintiff does not allege that he tripped over "dirt and debris," "scattered tools" or "sharp projections" (See Harasim v Eljin Const. of New York, Inc., 106 AD3d 642, 643 [1st Dept 2013]).[3]

In light of the foregoing, plaintiff's motion for summary judgment on his Labor Law §241(6) claim is denied and defendant's motion for summary judgment dismissing same is granted.

---

[3] "Since the provisions of the Industrial Code on which plaintiff relies are inapplicable to the subject accident, the 'integral to the work' doctrine—a defense to an applicable violation—is not implicated here" (Brown v Tishman Constr. Corp. of New York, 226 AD3d 529, 530 [1st Dept 2024] [internal citations omitted]).

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

Page 10 of 17

Labor Law §200

Plaintiff's motion for summary judgment on his Labor Law §200 claim is also denied.[4]

Labor Law §200 is a codification of the owner's or general contractor's common-law duty to maintain a safe construction site, providing:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons. The board may make rules to carry into effect the provisions of this section.

(Labor Law §200[1]).

Liability under this statute and common-law negligence may be based on "either the means or methods by which the work is performed or a dangerous premises condition" (Sandoval-Morales v 164-20 N. Blvd., LLC, 231 AD3d 501, 503 [1st Dept 2024] [internal citations omitted]). Where a worker is injured as a result of the manner in which the work is performed, including the equipment used, "the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work" (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 144 [1st Dept 2012]; see also Foley v Consolidated Edison Co. of N.Y., Inc., 84 AD3d 476, 477 [1st Dept 2011]). However, where

> the accident arises … from a dangerous premises condition, 'a property owner is liable under Labor Law §200 when the owner created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice.' Similarly, a general contractor may be liable under section 200 and the common law if it had 'control over the work site and knew or should have known of the unsafe condition that allegedly brought about plaintiff's injury'

---

[4] Although plaintiff's notice of motion did not indicate that plaintiff sought summary judgment on this claim, this oversight is excused. Since defendants have had a full opportunity to oppose this branch of his motion in their opposition and separate motion for summary judgment, its consideration does not prejudice defendants (See e.g. Matter of LiMandri, 171 AD2d 747 [2d Dept 1991]).

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 11 of 17**

[* 11]

(Plumer v Turner Const. Co., 2021 NY Slip Op 30733[U], 19-20 [Sup Ct, NY County 2021] [internal citations omitted]).

Plaintiff argues that his accident arose from both a dangerous condition of the premises— i.e., the tripping hazard posed by the unguarded inlay—and the manner in which the work was performed, i.e., the presence of the scaffolding which obstructed Woodward's access to the mezzanine level. However, this latter argument is undercut by plaintiff's testimony that he ducked under the scaffold and stood back up without incident and assertion that it was not the scaffold that caused him to trip but the inlay. Accordingly, the sole question is whether plaintiff has established that defendants failed to remedy a dangerous or defective condition of which they had actual or constructive notice.

Plaintiff has failed to establish to do so. Contrary to plaintiff's characterization, Kurpis's testimony regarding the nature of Atlas employees' concerns about the inlay and his conversations with J.T. Magen employees about the inlay is insufficiently specific to establish actual notice (See Maldonado v Metro. Life Ins. Co., 289 AD2d 176 [1st Dept 2001] ["Merely telling the owner's representative that 'we don't have enough machines,' as plaintiff claims to have done, is insufficient to provide actual notice of either a specific defect or that there was anything wrong with the particular machine at issue"]). Even setting this aside, Mark Hackett's testimony that he did not recall ever receiving a complaint about the inlay creates an issue of fact as to J.T. Magen's actual notice which precludes summary judgment.

*Defendants' Motion for Summary Judgment*

Defendants' motion for summary judgment as to plaintiff's Labor Law §241(6) claim is granted. As discussed above, Industrial Code §23-1.7(e) does not apply and plaintiff has abandoned his claim to the extent it was based on Industrial Code §23-2.1 (See Kempisty v 246

156960/2017 WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No. 002 003 004

Page 12 of 17

12 of 17

[* 12]

Spring Street, LLC, 92 AD3d 474 [1st Dept 2012]). Defendants' motion for summary judgment is also granted as to plaintiff's Labor Law §241-a claim, as there is no dispute that plaintiff's injury did not occur in an elevator shaftway, hatchway, or stairwells. Finally, defendants' motion as to plaintiff's Labor Law §200 claim is granted, in part, as to NBC Universal and Tishman, who have established through the undisputed affidavits of Tina Silvestri, Paul Ridguard and Mark Hackett that "[t]here was no evidence that the owner defendants had any workers or representatives on site who could control the means and methods of plaintiff's work, create a hazardous condition, receive actual notice of a dangerous condition, or conduct any inspections that would uncover a condition sufficient to impute constructive notice" (Marte v Tishman Constr. Corp., 223 AD3d 527 [1st Dept 2024]).

However, defendants' motion to dismiss plaintiff's Labor Law §200 claim as against J.T. Magen is denied. As discussed above, issues of fact exist as to whether J.T. Magen had actual or constructive notice of the subject condition such that it may be liable under this statute. Defendants' other arguments on this point are also unavailing: They assert that the inlay presented a "trivial" defect, based on Mark Hackett's testimony that "there was a one and 1/8th of an inch differential in height between the inlay and the floor," but this testimony is contradicted by plaintiff's testimony that the inlay was six to eight inches deep. This discrepancy presents an issue of fact for trial rather than grounds for summary judgment (See Carter v HP Lafayette Boynton Hous. Dev. Fund Co., Inc., 210 AD3d 580, 581 [1st Dept 2022] ["conflicting evidence as to the height differential of the alleged rise in the threshold at the time of the accident and the photograph showing the defect prevent a finding that the condition did not constitute a tripping hazard"]). Defendants' alternative argument—that if the inlay was six to eight inches deep, as plaintiff

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 13 of 17

[* 13]

testified, it was an open and obvious condition and not inherently dangerous—similarly presents a question of fact for trial (See Hutson v Regis High School, 226 AD3d 478 [1st Dept 2024]).

### *J.T. Magen's Motion for Summary Judgment*

That branch of defendant's motion for summary judgment on its third-party claim for contractual indemnification is denied as premature. An "insurer's duty to indemnify arises only when an insured has been held liable for damages covered under the policy" (Alvarado v The Trustees of Columbia Univ. in the City of New York, 2022 NY Slip Op 30888[U], 13 [Sup Ct, NY County 2022] citing Bovis Lend Lease LMB Inc. v Garito Contr., Inc., 65 AD3d 872, 875 [1st Dept 2009]) and where, as here, "the indemnitee's negligence remains unresolved, summary judgment in favor of the indemnitee on a claim for contractual indemnification is inappropriate" (Id. quoting Pardo v Bialystoker Ctr. & Bikur Cholim, Inc., 10 AD3d 298, 302 [1st Dept 2004]).

### *Atlas's Motion for Summary Judgment*

Atlas's motion for summary judgment dismissing defendants' third-party claim for contractual indemnification is denied. The indemnification provision in question, Paragraph 18 of the Purchase Order Terms and Conditions, provides that:

> To the fullest extent permitted by law, Subcontractor [Atlas] agrees to fully indemnify, defend and hold harmless J.T.M [J.T. Magen & Company, Inc.], Owner [NBC Universal], their officers, directors, agents and employees, Building Owner [NBC Universal], Landlord, Managing Agent [Tishman Speyer], Lender and all applicable additional indemnitees, if any, their respective agents, officers, directors, employees and partners (hereinafter called "Indemnitees") from and against any and all claims ... including attorneys' fees, costs, court costs, expenses and disbursements ... related to . . . personal injuries . . . arising out of or in connection with or as a result of or as a consequence of (a) the performance of the Work . . . whether or not caused in whole or part by the Subcontractor or any person or entity employed, either directly or indirectly, by the Subcontractor including any sub-subcontractors and sub tier contractors therefor and their employees . . . . The parties expressly agree that this indemnification agreement contemplates (1) full indemnity in the event of liability is imposed against the Indemnitees without negligence and solely by reason of statute, operation of law or otherwise; and (2)

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
  **Motion No.  002 003 004**

**Page 14 of 17**

14 of 17

partial indemnity in the event of any actual negligence on the part of the Indemnitees either causing or contributing to the underlying claim . . . .

(NYSCEF Doc. No. 81 [Purchase Order at ¶18]).

Atlas argues that because its work on the renovation was limited to installing high hats, power, fire alarm and low voltage work, plaintiff's injury did not arise out of the work it performed under its contract with J.T. Magen such that this indemnification clause would be implicated. However, "[u]nder New York law, the words 'arising out of' have broad significance, inclusive of 'incident to' or 'having connection with'" (Gamez v Sandy Clarkson LLC, 222 AD3d 482, 483 [1st Dept 2023] [internal citations omitted]) and contemplate the circumstances alleged here, in which plaintiff tripped and fell on the work site while carrying materials to the site of his work on the premises (See id. [injuries sustained in plaintiff's fall into unguarded void in staircase arose out of his ceramic tiling work]; see also Estevez v SLG 100 Park LLC, 215 AD3d 566, 570-71 [1st Dept 2023] [injuries sustained by plaintiff electrician when work site's freight elevator doors closed on him arose out of his work at the site]). Atlas also argues that it has no obligation to indemnify J.T. Magen because there is no evidence that it was negligent, but its contract with J.T. Magen contains no such requirement as a predicate to indemnification (See e.g., Macancela v E.W. Howell Co. LLC, 83 Misc 3d 1291(A) [Sup Ct, Kings County 2024]).

That branch of Atlas's motion to dismiss defendants' third-party claim for breach of contract, based on Atlas's alleged failure to procure insurance, is also denied. Atlas asserts that it has established that it procured the requisite insurance through the testimony of its Corporate Secretary, Arthur Grossman, and documentary evidence, i.e. a Certificate of Insurance and General Liability Policy. However, while a "certificate of insurance may be sufficient to raise an issue of fact, but standing alone, it does not prove coverage as a matter of law (See Prevost v One City Block LLC, 155 AD3d 531, 536 [1st Dept 2017]). In addition, the General Liability Policy is

156960/2017  WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 15 of 17

[* 15]

"attached to an attorney affirmation and … not authenticated pursuant to CPLR 4518(a)" and it is therefore "inadmissible and cannot form the basis upon which to grant summary judgment" (Alvarado v The Trustees of Columbia Univ. in the City of New York, 2022 NY Slip Op. 30888[U], 15 [Sup Ct, NY County 2022] citing Clarke v Am. Truck & Trailer Inc., 171 AD3d 405, 406 [1st Dept 2019]). Finally, Grossman's testimony is insufficient to establish that Atlas has satisfied its obligations—he did not recall procuring the requisite insurance but simply assumed that he had, because it was his normal practice to do so (NYSCEF Doc. No. 78 [Grossman EBT at pp. 30-33, 58]).

Accordingly, it is

**ORDERED** that plaintiff's motion for summary judgment is denied; and it is further

**ORDERED** that defendants' motion for summary judgment dismissing the complaint is granted to the extent that plaintiff's Labor Law §241(6) and Labor Law §241-a claims are dismissed in their entirety, and plaintiff's Labor Law §200 claim is dismissed as against Tishman Speyer Properties L.P. and NBC Universal Media LLC, and is otherwise denied; and it is further

**ORDERED** that J.T. Magen & Company, Inc.'s motion for summary judgment on its third-party claim for contractual indemnification as against Atlas-Acon Electric Service Corp. is denied; and it is further

**ORDERED** that third-party defendant Atlas-Acon Electric Service Corp.'s motion for summary judgment dismissing the third-party complaint is denied; and it is further

**ORDERED** that counsel for defendants are to serve a copy of this decision and order, with notice of entry, upon plaintiff and third-party defendant Atlas-Acon Electric Service Corp., as well as the Clerk of the Court (60 Centre Street, Room 141B) and the Clerk of the General Clerk's

156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.
Motion No.  002 003 004

Page 16 of 17

[* 16]

Office (60 Centre Street, Room 119), who are directed to enter judgment accordingly; and it is further

**ORDERED** that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "EFiling" page on this court's website at the address www.nycourts.gov/supctmanh); and it is further

**ORDERED** that the parties are to appear for a status conference in Part 4 (80 Centre Street, room 308) on April 3, 2025, at 9:30 a.m.

This constitutes the decision and order of the Court.

| | |
|---|---|
| __1/13/2025__ | |
| DATE | HON. JUDY H. KIM, J.S.C. |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**156960/2017   WOODWARD, ROBERT vs. J.T. MAGEN & COMPANY, INC.**
**Motion No.  002 003 004**

**Page 17 of 17**

17 of 17

[* 17]