**Oliveira v 5462 125th Realty LLC**

2025 NY Slip Op 31189(U)

April 9, 2025

Supreme Court, New York County

Docket Number: Index No. 150949/2020

Judge: James d'Auguste

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **Hon. James E. d'Auguste**  PART 55

*Justice*

-------------------------------------------------------------------------X

EDVALDO NUNES OLIVEIRA,

Plaintiff,

- v -

5462 125TH REALTY LLC, 54-62 125TH INVESTORS LLC, THE JAY GROUP INC., COMMON GROUND MANAGEMENT CORPORATION, BREAKING GROUND HOUSING DEVELOPMENT FUND CORPORATION, PRESTIGE CONSTRUCTION NY LLC,

Defendants.

-------------------------------------------------------------------------X

5462 125TH REALTY LLC, PRESTIGE CONSTRUCTION NY LLC,

Plaintiffs,

-against-

GBOLAHAN OKUBADEJO,

Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150949/2020 |
| MOTION DATE | 09/21/2022, 10/31/2022 |
| MOTION SEQ. NO. | 002 003 |

**DECISION + ORDER ON MOTION**

Third-Party
Index No. 595539/2024

The following e-filed documents, listed by NYSCEF document number (Motion 002) 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 54, 55, 56, 57, 58, 59, 87, 89, 90, 91, 92, 93, 98, 99 (Motion 003) 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 86, 88, 96, 97, 100, 101, 102, 103, 104, 105, 106, 107

were read on this motions for SUMMARY JUDGMENT .

Motion sequence numbers 002 ("MS002") and 003 ("MS003") are hereby consolidated for disposition.

This is an action to recover damages for personal injuries allegedly sustained by a construction worker on August 12, 2019, when, while working on the 16th floor of a new construction building located at 56 West 125th Street, New York, New York (the Premises), he was struck by a falling aluminum beam.

In MS002, plaintiff Edvaldo Nunes Oliveira ("Oliveira") moves, pursuant to CPLR 3212, for summary judgment in his favor on his Labor Law Sections 240(1) and 241(6) claims against defendants 5462 125th Realty LLC ("Realty") and Prestige Construction NY LLC ("Prestige") (together, defendants).

In MS003, defendants move, pursuant to CPLR 3212, for summary judgment dismissing the complaint as against them.

## BACKGROUND

On the day of the accident, the Premises was owned by Realty. Realty hired Prestige to perform general contracting services for a project at the Premises that entailed the new construction of a high-rise building (the Project). Prestige subcontracted structural steel and concrete work to non-party Magellan Concrete (Magellan). Plaintiff was employed by Magellan.

### *Plaintiff's Deposition Testimony (NYSCEF Doc. No. 44)*

Plaintiff testified that on the day of the accident, he was employed by Magellan as a carpenter. His work included assembling and stripping forms (plaintiff's tr at 69). Plaintiff's foreman was "Jalais" (*id.* at 67), a Magellan employee.[1]

Plaintiff testified that the week prior to the accident, he worked on the 16th and 17th floors of the Premises (*id.* at 70, 71). His work included "assembl[ing] the deck, plywood and the concrete" (*id.* at 70); specifically placing plywood on the metal deck and erecting columns (*id.* at 73). At that time, the 17th floor was also being constructed by Magellan employees (*id.* at 71). Only Magellan workers were on floors 16 and 17.

---

[1] As made clear in a later deposition, "Jalais" refers to Jaalas Moura. Accordingly, the Court will refer to "Jalais" from hereon as "Moura"

On the day of the accident, plaintiff and two coworkers were directed to work on the 16th floor, stripping columns. This entailed removing the wooden formwork around the newly poured and cured concrete (*id.* at 75). Plaintiff's coworkers removed the materials from the column and passed them to plaintiff. Plaintiff would then "prepare" the stripped materials to be sent to the 17th floor, for use in building the columns on that floor (*id.* at 77).

At the time of the accident, plaintiff was "bending over" removing nails from a piece of wood, when he "felt the impact of the beam" (*id.* at 80). Specifically, he felt something strike him on the back, causing him to fall onto his left knees (*id.* at 81) and then onto his stomach (*id.* at 82). He then turned over to figure out what had struck him. His two coworkers informed him that he was struck by "a thick seven five" beam (*id.* at 83). A "thick seven five" is the type of beam that is laid horizontally (*id.* at 86) and "used to assemble the deck" (*id.* at 83).

Plaintiff testified that the beam that fell and struck him on the back "had already been installed" as a part of the temporary deck of the 17th floor and "still needed to be stripped" (*id.* at 84-85). He also testified that the beam that fell was going "to be stripped to be sent to the 17th floor" (*id.* at 85). Plaintiff further testified that he saw the location that he believed the beam had fallen from, which was somewhere between six to nine feet above him (*id.* at 86).

After the accident, Moura, his foreman, arrived. Moura "took a video" of the accident location (*id.* at 87). The video was played at the deposition. Plaintiff testified that the video depicted Moura and plaintiff and the two coworkers. In the video, Moura asked plaintiff his name and whether he had fallen from a height (*id.* at 89). According to plaintiff, the video also depicted "the beam that fell on [his] back" (*id.* at 90).

Plaintiff was shown a copy of an accident report that contained his witness statement, written in Portuguese (*id.* at 94). He did not write the statement, but he confirmed that it was

**150949/2020   NUNES OLIVEIRA, EDVALDO vs. 5462 125TH REALTY LLC**                                    **Page 3 of 15**
**Motion No.  002 003**

accurate (*id.* at 97). Defense counsel then asked the interpreter to translate the document into English and the translator complied (*id.* at 97).

According to the interpreter, plaintiff's witness statement noted that plaintiff "was on the 16th floor stripping columns . . . when one form touched one beam five seven six and fell on [plaintiff's] back" (*id.* at 97). It also stated that plaintiff was "bending over when the beam fell on his back and he fell to the ground" (*id.* at 97). Plaintiff confirmed that his statement was taken accurately (*id.* at 98).

### *Deposition Testimony of Jaalas Moura (Magellan's Foreman) (NYSCEF Doc. No. 47)*

Jaalas Moura testified that on the day of the accident, he was a foreman for Magellan at the Project (Moura tr at 11). Magellan was responsible for constructing the concrete superstructure of the Premises, including "formworks for the slab . . . rebar work on the slab . . . plywood on the decking, . . . formworks on columns and sheet walls, and . . . concrete" (*id.* at 12). Prestige was the general contractor for the Project (*id.* at 18).

Moura testified that he did not witness the accident (*id.* at 34). He learned of the accident that day when he was called to the floor. Moura testified that there was a witness to the accident, a Magellan employee named Jose Alfaro (*id.* at 35).

When Moura arrived at the accident location, he saw plaintiff "standing" along with Alfaro and "another guy" (*id.* at 36). Plaintiff then "reported to [Moura] that he got hurt , , , and [plaintiff] said a beam fell on top of his back" (*id.* at 36). There was a "5 7 aluminum main beam" on the ground near where plaintiff stood (*id.* at 39). He did not know how much the beams weighed. Plaintiff also told Moura that the beam fell "from the ceiling" (*id.* at 37). The ceiling was approximately nine feet above the floor.

Moura was asked if he learned why the beam fell. He testified that the beam was the "edge" of the deck (*id.* at 44), which is the "last thing [Magellan] strip[s] on the decking" (*id.* at

**150949/2020   NUNES OLIVEIRA, EDVALDO vs. 5462 125TH REALTY LLC**                    **Page 4 of 15**
**Motion No.  002 003**

[* 4]

45). Part of stripping a deck after a floor was completed included "lower[ing] down the aluminum from the deck" so it can be used later (*id.* at 48). According to Moura, the beam that fell was "supposed to be removed" (*id.* at 45).

At the deposition, Moura was shown a copy of a Magellan accident report, which included a copy of the witness statement of Jose Alfaro, plaintiff's coworker. Moura was familiar with the document, but he did not prepare it (*id.* at 51). The report was written in Portuguese. Moura speaks and reads English, Spanish and Portuguese (*id.* at 56).

Moura was asked by plaintiff's counsel to translate the report and read it into the record, which he did (*id.*at 57). He testified that it stated that while plaintiff's coworkers were removing forms, "one form hit one beam, 5 7 main, and fell on his back" (*id.* at 59). Moura was also asked by plaintiff's counsel to translate Alfaro's statement. He did so, testifying that it stated "[w]hen [Alfaro] was removing [a] column form, [he] hit the beam, the beam came to fall on [plaintiff's] back" (*id.* at 63).

Moura was also shown a video. He testified that he took the video as a part of the incident report (*id.* at 79). He confirmed that the video was filmed at "the place of the accident" (*id.* at 80). He filmed it when he arrived. After viewing the video, he confirmed it showed Alfaro describing the accident, and that it depicted the subject beam (*id.* at 85).

### *The Accident Reports (NYSCEF Doc. No. 45)*

Plaintiff annexes, as exhibit G to his motion, a copy of an employee's accident report, dated August 12, 2019, the date of the accident (plaintiff's notice of motion, exhibit G, p 1), signed by plaintiff. It is not written in English and is unaccompanied by any translation. Similarly, exhibit G contains a copy of Alfaro's witness's accident report, which is not written in English and is unaccompanied by any translation (*id.* at 5)

Exhibit G also contains a copy of a supervisor's accident report (*id.* at 3), prepared on the date of the accident by Miguel Garcia, a Magellan "group leader" (Moura tr at 59). Garcia's report describes the accident as follows:

> "[Plaintiff] was crouched down removing some nail from the 2x4
> that was reinforcing the columns on the floor. At that moment one
> of the 5'7" main beams that was loose fell on his left rib"

(plaintiff's notice of motion, exhibit G, p. 3).

## DISCUSSION

"'[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers'" (*Smalls v AJI Indus., Inc.*, 10 NY3d 733, 735 [2008]; quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986] [emphasis omitted]). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Schiraldi v U.S. Min. Prods.*, 194 AD2d 482, 483 [1st Dept. 1993] [internal quotation marks and citation omitted]). "If there is any doubt as to the existence of a triable issue, the motion [for summary judgment] should be denied" (*Grossman v Amalgamated Hous. Corp.*, 298 AD2d 224, 226 [1st Dept. 2002]; citing *Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 [1978]).

### *Preliminary Procedural Issues*

#### *The Admissibility of Untranslated Exhibits*

As a part of his motion, plaintiff submits two untranslated accident reports – plaintiff's statement and Alfaro's statement (plaintiff's exhibit G; NYSCEF Doc. No. 45; plaintiff's exhibit

[* 6]

J; NYSCEF Doc. No. 48 [which also includes a C-3 workers' compensation report, also prepared in a foreign language and untranslated]).

CPLR 2101 (b) requires that where an exhibit is filed in a foreign language "it shall be accompanied by an English translation and an affidavit by the translator stating his qualifications and that the translation is accurate."

Here, it is undisputed that plaintiff's witness statement, which is written in Portuguese, is not accompanied by an English translation. That said, at his deposition, defense counsel presented the witness statement to plaintiff and specifically requested that the deposition's translator read his statement into the record in English (plaintiff's tr at 95-97). Specifically, defense counsel asked plaintiff's counsel if it was acceptable to "have the interpreter read it with him, confirm this is what he said and then she [the interpreter] can translate it?" (plaintiff's tr at 95). Plaintiff's counsel agreed to this request. Plaintiff also confirmed that the statement was accurate.

As defense counsel explicitly elicited this translation and presented no objection at the time to defense counsel's own request, defendants have waived any objection to the translation of plaintiff's witness statement contained in plaintiff's deposition.

However, as to Alfaro's witness statement, it was translated by Moura, who was not the author of the statement and could not attest to its authenticity. He is also not a translator. That defense counsel did not object to Moura's translation at his deposition does not waive such an objection on this motion (CPLR 3115 [a] and [d]). Moura's ability to act as a translator is not the type of objection that could be "obviated or removed" had it been made at the deposition (*id.*).

Given the foregoing, Alfaro's witness statement stands, effectively, as untranslated, and is therefore inadmissible.

### The Common-Law Negligence and Labor Law § 200 claims (Motion Sequence Number 003)

Defendants move for summary judgment in their favor on the common-law negligence and Labor Law Section 200 claims against them. The record supports that plaintiff's accident arose from the means and methods of Magellan's work at the Premises. Under the means and methods analysis, "liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept. 2012] [emphasis in original]). Here, the record establishes that defendants – as owner and general contractor – did not exercise such supervision over the injury producing work. Notably, plaintiff does not oppose dismissal of these claims.

Accordingly, defendants are entitled to summary judgment dismissing these claims.

### The Labor Law § 240(1) claim (Motion Sequence Number 002 and 003)

Plaintiff moves for summary judgment in his favor as to liability on his Labor Law Section 240(1) claim. Defendants move for summary judgment dismissing the same claim.

Labor Law Section 240(1), known as the Scaffold Law, provides as relevant:

> "All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law Section 240(1) "imposes a nondelegable duty on owners and contractors to provide devices which shall be so constructed, placed and operated as to give proper protection to those individuals performing the work" (*Quiroz v Memorial Hosp. for Cancer & Allied Diseases*, 202 AD3d 601, 604 [1st Dept. 2022] [internal quotation marks and citations omitted]). It "'was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application

[* 8]

of the force of gravity to an object or person'" (*John v Baharestani*, 281 AD2d 114, 118 [1st Dept. 2001], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]).

The absolute liability found within Section 240 "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*O'Brien v Port Auth. of N.Y. & N.J.*, 29 NY3d 27, 33 [2017] [internal quotation marks and citation omitted]; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). Therefore, Section 240(1) "does not cover the type of ordinary and usual peril to which a worker is commonly exposed at a construction site" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 267 [1st Dept. 2007]). Therefore, to prevail on a Labor Law Section 240(1) claim, a plaintiff must establish that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]).

When an injury stems from a falling object, the inquiry revolves around a determination as to whether the object was being hoisted or secured at the time of the accident, or that it was "'a load that required securing for the purposes of the undertaking at the time that it fell'" (*Melendez v Brown-United, Inc.*, 209 AD3d 437, 438 [1st Dept. 2022], quoting *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 268 [2001]; *see also Mora v Sky Lift Distrib. Corp.*, 126 AD3d 593, 595 [1st Dept. 2015]).

As an initial matter, defendants, as owner and general contractor, are proper Labor Law defendants.

Here, plaintiff testified that while bending over, he was struck in the back by an object (plaintiff's tr 80-81) and that after he fell, he turned over and realized what happened to him (*id.* at 81). Also, plaintiff was later informed by coworkers that the object that struck him was an

aluminum beam that made up a part of the temporary deck supporting the under-construction 17th floor (*id.* at 83).

It is undisputed that plaintiff did not immediately see the object that struck him. However, plaintiff's prima facie case is "not dependent on whether he had observed what had hit him, or whether the object in question was dropped or fell in some other manner" (*Malan v FSJ Realty Group II LLC,* 213 AD3d 541, 542 [1st Dept. 2023]; *see also Leveron v Prana Growth Fund I, L.P.*, 181 AD3d 449, 450 [1st Dept. 2020]).

In addition, it is also undisputed that plaintiff could not identify why the object fell, aside from observing it after he fell, and being told that it fell. "[A] plaintiff is not required to show the exact circumstances under which the object fell" (*Harsanyi v Extell 4110 LLC*, 220 AD3d 528, 529 [1st Dept. 2023]). However, a plaintiff is required to "demonstrate that the lack of a protective device called for under Labor Law Section 240(1) proximately caused his injuries" (*Fromel v W2005/Hines W. Fifty-Third Realty, LLC*, 232 AD3d 513, 514 [1st Dept. 2024]).

In *Harsanyi*, the plaintiff was struck by an "unknown object" (*id.* at 529). In support of his motion, Harsanyi submitted admissible evidence that workers were actively working above him at the time of the accident and photographic evidence "depicting a large hole in the safety netting that served as overhead protection" (*id.* at 529). This evidence established that plaintiff was not provided proper protection under Section 240(1).

Here, while plaintiff could not state precisely why the beam fell, evidence demonstrated that workers were, like *in Harsanyi*, actively working above him at the time of the accident. Additional evidence, including witnesses that told plaintiff how the accident occurred, indicates that the beam did fall from another floor while plaintiff was working and hit him. Such occurrence is classic circumstantial evidence supporting a finding that this event happened as plaintiff and his coworkers testified it happened.

The Pattern Jury Instructions concerning circumstantial evidence provides, in pertinent part, as follows:

> "Circumstantial evidence is evidence of a fact that does not directly prove a fact in dispute but which permits a reasonable inference or conclusion that the fact exists. For example, a witness testifies that he saw this water glass on the bench. The witness states that, while he was looking the other way, he heard the breaking of glass, looked up, and saw me wiping water from my clothes and from the papers on the bench. This testimony is not direct evidence that I knocked over the glass; it is circumstantial evidence from which you could reasonably infer that I knocked over the glass."

PJI 1:70 General Instructions – Direct and Circumstantial Evidence

Here, no evidence was presented by defendants that safety measures, including overhead netting, were installed to shield against any falling items on the 17th floor above where plaintiff, and others, were working below, and prevent any injuries. Additionally, defendants do not advance any alternative factual scenario concerning the beam that fell from the 17th floor – at least nine feet above – and hit plaintiff, resulting in his injuries. Thus, while plaintiff was provided with certain safety devices, they did not protect him from the type of injury that he sustained. *Hoffman v SJP TS LLC*, 111 AD3d 467 (1st Dept. 2013) ["while there was no defect in the device, it was clearly inappropriate for the task at hand in light of the configuration of the building" (internal citations omitted)].

The facts of plaintiff's accident support Labor Law Section 240(1) liability as defendants failed to meet their nondelegable duty to provide plaintiff with an appropriate safety device to safeguard against elevation-related risks. *Saint v Syracuse Supply Co.*, 25 NY3d 117 (2015)(citation omitted). In opposition, defendants have failed to provide any version of the accident under which they could not be held liable, making summary judgment for plaintiff appropriate. *Harsanyi, supra*, at 529. Additionally, defendants have not shown that plaintiff was the sole proximate cause of his injury.

In sum, plaintiff's testimony, supported by parts of his witness statement translated at his deposition (plaintiff's tr at 97) establishes as a matter of law that he was struck by a falling object. Therefore, the plaintiff has established prima facie entitlement to summary judgment in his favor on his Labor Law Section 240(1) claim, while defendants failed to raise any genuine issues of triable facts to warrant denial of summary judgment.

Turning to defendants' motion, they argue that plaintiff's claim must be dismissed because plaintiff has failed to establish, as a matter of law, how the accident occurred and what device failed to provide adequate safety. Initially, most of defendants' arguments merely point to gaps in plaintiff's proof, and a defendant "cannot obtain summary judgment by pointing to gaps in plaintiff's proof" (*Torres v Indus. Container,* 305 AD2d 136, 136 [1st Dept. 2003]).

Defendants also argue that they are entitled to summary judgment dismissing the Section 240(1) claim because the record does not establish how the accident happened. In support they rely on *Public Adm'r of Queens County v 124 Ridge LLC,* 203 AD3d 493 (1st Dept. 2022) (124 Ridge). In *124 Ridge,* the plaintiff-decedent fell down a ladder in an unwitnessed accident and immediately died. As the accident was unwitnessed and no one (including the decedent) had testified as to how it occurred, the court dismissed the Labor Law Section 240(1) claim as speculative, noting that there was "no direct or circumstantial evidence as to how the accident happened" (*id.* at 494). Here, however, there is such evidence – plaintiff's testimony as to the happening of the accident, his accident statement, and evidence that there were, in fact, witnesses to the accident. Accordingly, unlike *124 Ridge*, where any determination for the cause of the accident would have been speculative, here there is sufficient evidence to allow a jury to make a determination as to the cause of the accident.

Accordingly, defendants are not entitled to summary judgment dismissing the Labor Law Section 240(1) claim as against them.

***The Labor Law § 241(6) Claims (Motion Sequence Numbers 002 and 003)***

Plaintiff moves for summary judgment in his favor on those parts of his Labor Law Section 241(6) claim premised on violations of Industrial Code 12 NYCRR 23-1.7(a)(1) and 2.1(a)(2). Defendants move for summary judgment dismissing the same.

Labor Law Section 241(6) provides, in pertinent part, as follows:

> "All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:
>
> * * *
>
> (6)     All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places."

Labor Law Section 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]; *see also Ross,* 81 NY2d at 501–502). Importantly, to sustain a Labor Law Section 241(6) claim, it must be shown that the defendant violated a specific, "concrete" implementing regulation of the Industrial Code, rather than a provision containing only generalized requirements for worker safety (*Ross,* 81 NY2d at 505). Such violation must be a proximate cause of the plaintiff's injuries (*Annicaro v Corporate Suites, Inc.*, 98 AD3d 542, 544 [2d Dept. 2012]).

*Industrial Code 12 NYCRR 23-1.7(a)(1)*

Industrial Code 12 NYCRR 23-1.7(a) governs overhead hazards. It is sufficiently specific to support a Labor Law Section 241(6) claim (*see Baptiste v RLP-E., LLC,* 182 AD3d 444, 445 [1st Dept. 2020]). Section 23-1.7(a)(1) provides, in pertinent part, the following:

"(a) Overhead hazards. (1) Every place where persons are required to work or pass that is normally exposed to falling material or objects shall be provided with suitable overhead protection."

Importantly, "where an object unexpectedly falls on a worker in an area not normally exposed to such hazards, [section 1.7(a)(1)] does not apply" (*Buckley v Columbia Grammar & Preparatory*, 44 AD3d 263, 271 [1st Dept. 2007]).

Here, there is no testimony, one way or the other, regarding whether the accident location was normally exposed to falling hazards. Defendants failed to establish through any testimony or admissible evidence that the accident location was not so located. Instead, defendants argue, as they did above, that there is no evidence that anything fell on plaintiff. In doing so, they again unpersuasively rely only on gaps in plaintiff's proof (*Torres,* 305 AD2d at 136).

In support of his motion, plaintiff argues that the occurrence of the accident establishes that the area was exposed to falling hazards. This position, also, fails to establish that the area was normally exposed to falling hazards. The happening of the accident, even if established, does not establish as a matter of law that the area was normally exposed to falling hazards.

Accordingly, neither party is entitled to summary judgment on this claim.

### *Industrial Code 12 NYCRR 23-2.1(a)(2)*

Industrial Code 23-2.1(a) governs the storage of materials. It is sufficiently specific to support a Labor Law Section 241(6) claim (*see Marrero v 2075 Holding Co. LLC,* 106 AD3d 408, 410 [1st Dept. 2013]). It provides, as relevant:

"(2) Material and equipment shall not be stored upon any floor, platform or scaffold in such quantity or of such weight as to exceed the safe carrying capacity of such floor, platform or scaffold. Material and equipment shall not be placed or stored so close to any edge of a floor, platform or scaffold as to endanger any person beneath such edge."

Here, there is no testimony that the beam was stored on a floor, platform or scaffold, nor that it was close to the edge of a floor, platform or scaffold. Rather, plaintiff testified that the beam "had already been installed" as a part of the temporary deck of the 17th floor and "still needed to be stripped" (plaintiff's tr at 84-85), while Moura testified that the beam was a part of the decking and was the "last thing [Magellan] strip[s] on the decking" (Moura tr at 45), and that the beam was slated to be "lower[ed] down . . . from the deck" (*id.* at 48).

Accordingly, the record establishes that the beam was not stored materials or equipment. Rather the beam was an installed part of a temporary structure. Accordingly, Industrial Code 23-2.1(a)(2) does not apply to this accident. Therefore, defendants are entitled to summary judgment dismissing this claim.

The parties remaining arguments have been considered and were determined to be unavailing.

For the foregoing reasons, it is ordered that plaintiff is granted summary judgment on MS002 solely to the extent of finding defendants Realty and Prestige liable under Labor Law Section 240(1). It is further ordered that defendants are granted summary judgment on MS003 solely to the extent of dismissing plaintiff's claims for common-law negligence, Labor Law Section 200, as well that part of the Labor Law Section 241(6) premised upon a violation of Industrial Code 12 NYCRR 23-2.1(a)(2).

This constitutes the decision and order of the Court.

| 04/09/2025 | | James d'Auguste, J.S.C. |
| --- | --- | --- |
| DATE | | |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

150949/2020 NUNES OLIVEIRA, EDVALDO vs. 5462 125TH REALTY LLC
Motion No. 002 003

Page 15 of 15